Innis *vs.* The State of Georgia.

---

S. B. INNIS, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

| 42 | 473 |
| 116 | 523 |
| 42 | 473 |
| f 120 | 436 |
| j 120 | 439 |
| 42 | 473 |
| 125 | 142 |

1. When a party was indicted for rape, and the evidence consisted of the prosecutrix, who testified she and her husband went together to see the defendant, a physician, and she went into an adjoining room to that her husband was in, and the doctor tried to kiss her, and out of this room into a small bed-room for the purpose of medical examination, where the crime was committed, and that she resisted with all her strength, and screamed more than once at the top of her voice, and five witnesses were close by the room, one in a bath with only a partition between, all near to the room, passing and repassing, and heard no noise or screams, and saw her come out of the room, and testified that they saw no appearance of anything unusual, and the Court charged the jury as follows:

"It is a rule that a witness swearing positively to a fact, is to be believed in preference to many who swear negatively to the same fact, that is, that they did not see or hear it. If the existence of a fact be sworn to by one credible witness, and many other witnesses who were in a situation to see or hear it, testify that they did not see or hear it, or know that it transpired, you are bound to regard the testimony given by the witness who swears positively, in preference to those who swear negatively."

*Held,* While the general rule is, that other things being equal, positive evidence proponderates over negative evidence, the charge of the Court:

was error, under the facts of this case, in stating the rule too strongly; that the jury were bound to regard the testimony of the positive witness in preference to those who testified, for circumstances may outweigh positive testimony.

2. *Held again,* In cases of rape, the question of guilt or innocence should not be measured arbitrarily by the character of the proof, whether positive or negative, direct or circumstantial; but by the weight of the proof, that all the facts should be submitted to the jury under the charge of the Court, stating the law in regard to what was necessary to establish the accusation, and the jury should be left to consider the whole evidence to ascertain the guilt or innocence of the prisoner.

See WARNER, J., dissenting from the judgment.

Rape.   Evidence.   Charge of Court, etc.   Before Judge HOPKINS.   Fulton Superior Court.   October Term, 1870.

The details of this case are sufficiently set forth in the parts of the proceedings below and the opinions, for an understanding of the points decided.

When the evidence was concluded, the Court charged the jury as follows:

*Gentlemen of the Jury:*   You begin this trial with a presumption of innocence in favor of the defendant.   The law presumes him to be innocent, and that presumption continues until the State satisfies you, by proof beyond a reasonable doubt, of the defendant's guilt.   The State makes the charge and must prove it.   The law allows the prisoner to make to the Court and jury such statement in the case, not under oath, as he may deem proper in his defense.   That statement is to have such force only as you may think right to give it. "Rape is the carnal knowledge of a female forcibly and against her will."   The defendant must have had carnal knowledge of the female, Mary Meyer, that is, he must have inserted his private part into her person in the way of sexual intercourse.   The extent of the penetration is unimportant, so that his part was inserted into hers.   This knowledge must have been forcibly and against her will.   If he used force,

Innis *vs*. The State of Georgia.

and it was accomplished against her will, the crime was complete.

Witnesses are to be believed, unless they be impeached in some of the modes which the law declares sufficient to throw suspicion on their testimony.

If a witness swears falsely, wilfully and knowingly, he is not entitled to credit in any respect, and is not to be believed, unless the remainder of his testimony is corroborated by circumstances, or supported by other witnesses. It is a rule that a witness swearing positively to a fact is to be believed in preference to many who swear negatively to the same fact, that is, that they did not see or hear it. If the existence of a fact be sworn to, positively, by one credible witness, and many other witnesses, who were in a situation to see or hear it, testify that they did not see or hear it, or know that it transpired, you are bound to regard the testimony given by the witness who swears positively, in preference to those who swear negatively. To illustrate this and fix the principle on your minds, if you, the jury, were in a room where there was a clock, and, after coming out, a question should be raised as to whether the clock struck a certain hour while you had been there, if three were to swear that they heard it, and the other nine that they did not hear it, the three must be believed rather than the nine. But if you all had gone there for the purpose of ascertaining whether the clock would strike at a certain hour, and all equally attentive, then the testimony of all would be positive. To illustrate further: if, on the trial of a criminal case, the prosecutor should swear that the defendant had a pistol about his person, and that he saw it during the quarrel between himself and the defendant, and a witness for the defense should swear that he was present at the quarrel, saw no pistol, looked attentively and closely to see if he could see anything of the sort, and must have seen it if defendant had had it about his person at the time, the positive testimony of the prosecutor would prevail over the negative testimony of the other witness. If there is an

apparent conflict of testimony, you must so reconcile it as to make all speak the truth, and not impute perjury to any, if you can possibly do so; but if there is an irreconcilable conflict, and the witnesses are equally credible, you will give credit to those who had the best opportunity of knowing the facts, and the least motive for misstating them. The Court permitted the defendant to introduce testimony tending to show improper intimacy, and an act of bastardy between the witness, Mary Meyer, and one Croft. After mature reflection I now instruct you that the testimony as to that intimacy with Croft and that act of bastardy has no legal weight or significance in this case, and will not be considered by you to the credit or discredit of that witness. That is not a mode prescribed by law for impeaching her. If the testimony excludes from your minds all reasonable doubt of the defendant's guilt, you will find him guilty. Moral and reasonable certainty is all that can be expected in legal investigation, but you must be satisfied of his guilt beyond a reasonable doubt. If the mind is wavering, unsettled, cannot be satisfied from the evidence whether the crime was committed at all, that must acquit. But the doubt must grow out of the testimony. You cannot create for yourselves a doubt and act upon it. Fancies may suggest themselves to sceptical minds to create unsubstantial doubt, or that witnesses may not remember accurately, may be mistaken, may swear falsely, etc., but such things are not allowable. To acquit upon light, trivial and fanciful suppositions and remote conjectures is a virtual disregard of the juror's oath.

If you find the defendant guilty, you will say so in your verdict. If you find him guilty you may, if you see proper to do so, recommend him to mercy. If you find him guilty and recommend to mercy, the punishment would be different, and you will be particular to render your verdict thus: We, the jury, find the defendant guilty, and recommend to mercy. If you find him guilty, you will simply say so.

Innis *vs.* The State of Georgia.

The jury returned a verdict of guilty, recommending the defendant to the mercy of the Court. Whereupon defendant, by his counsel, moved for a new trial upon the following grounds, to-wit:

1st. Because the Court erred in not allowing defendant's counsel to interrogate the witness, Thomas Spencer, Justice of the Peace, as to whether A. E. Cloud, witness for the defendant, had sworn on the committing trial before him, "that defendant, on the evening upon which the rape is alleged to have been committed, asked him if he had seen or heard anything that would show that a rape had been committed in the adjoining room to that in which witness was, this evidence being offered not for the purpose of impeaching the witness, Cloud, but for the purpose of sustaining the testimony of the witness, Hughes, who was sought to be impeached upon the ground that he had sworn to additional facts to what had been testified to by him on the committing trial.

2d. Because the Court erred in allowing the State, over the objections of defendant's counsel, to cause the witness, Hughes, to repeat a dialogue from the play of Punch and Judy, which he stated he had been committing to memory at the time that certain facts transpired, about which he had been testifying.

3d. Because the Court erred in refusing to allow defendant to prove by the witness, Gresham, that the prosecutrix had offered to settle this case in consideration of the payment of a certain sum of money.

4th. Because the Court erred in its charge to the jury upon the subject of positive and negative testimony, as applicable to the facts of this case, as aforesaid in said charge.

5th Because the Court, in its charge to the jury, excluded from their consideration all evidence tending to show that the witness, Mary Meyer, had had intercourse with one Croft,

and had been the mother of an illegitimate child prior to the alleged rape, after having admitted said evidence, and having allowed counsel to comment upon it in argument to the jury. For a proper understanding of this ground, it is necessary to state that when the witness, Mary Meyer, was being cross-examined as to this fact, objection was made on the part of the State, which objection was overruled without argument. This action on the part of the Court convinced the defendant that this evidence would be considered by the jury under the charge, and the defense was conducted under this impression.

6th. Because the evidence as to the witness, Mary Meyer, having had intercourse with one Croft, and having been the mother of a bastard child by him, was admissible and proper to be considered by the jury, and the Court erred in charging to the contrary.

7th. Because the charge of the Court, as a whole, was calculated to exclude from the jury the consideration of defendant's evidence.

8th. Because the Court erred in the portion of its charge as to doubts.

9th. Because the Court erred in ruling, when defendant's counsel opened the case to the jury, that law must be read to the Court and that the jury must take the law as given them in charge by the Court.

10th. Because the verdict was contrary to law, the evidence, etc.

11th. Because of the newly discovered evidence of J. J. Meador.

12th. Because the Court erred in charging the jury that the evidence tending to show that the witness, Mary Meyer, had had improper intercourse with one Croft, and had an illegitimate child, was not to be considered by the jury after having admitted the same by an express ruling, for the defendant would otherwise have proven by one Dr. Rosenberg

that the witness, Mary Meyer, was suffering from gonorrhea a short time before the rape is alleged to have been committed, which evidence, under the first ruling of the Court, was considered unnecessary.

(NOTE BY THE JUDGE.—The defendant did not offer to prove on the trial or at any other time the matter here stated, nor did he attempt to show that Dr. Rosenberg would prove such fact. I do not certify that he would have made the proof.)

The Court refused a new trial, and error is assigned on said grounds.

L. J. GARTRELL, HARRY JACKSON, for plaintiff in error.

E. P. HOWELL, Solicitor General, for the State.

LOCHRANE, C. J.,

Without going into the mass of testimony in this case, we may briefly remark that the defendant was indicted for the crime of rape, and was brought to trial in the Court below and convicted. He moved for a new trial on several grounds, one of which only, we propose to review as the grounds of our judgment in this case, viz: "That the Court erred in its charge to the jury upon the effect of positive and negative testimony under the facts of this case."

The evidence shows that the prosecutrix went with her husband to the office of the prisoner, who was a physician. She went from the room where her husband was seated to an adjoining room, and the doctor asked her if she had any other man beside her husband. Her reply shows that she had one before, and, on cross-examination, it appeared she had had a child by him. The doctor took her by the hand, into a small room with a bed in it, and there, she says, committed the offense, by pushing her down on the bed. She states that

she halooed as loud as she could more than once. She also states that she saw a man in the bath-room as she went from the second room to the room where the crime is alleged to have been committed.

The defense consisted of some five witnesses; one describing the plan of the house, and the partitions and the bath-rooms, the door to the room being upright plank, not reaching close to the top, etc. One, who was in the bath-room, divided by a partition of upright plank from the bedroom, saw them go into this room, and he saw her come out, heard no noise in the room, nor screaming, and saw nothing unusual in the appearance of either coming out. Another witness, off one room from the bed-room, taking a bath, heard no noise, etc. Another female witness who was about and saw her as she came out, saw nothing to cause her suspicions, etc., no appearance of tears, nothing unusual in her manner, etc., she had walked by the bed-room door, and heard no screams like a lady's voice or of anything of that sort. Another man who was waiting on the baths, and passing and repassing, testified to the same facts. Another man who was passing and repassing the room on a piazza some four or five feet from the door, stated the same facts.

Under this statement of facts, our distinguished brother who presided at the trial, charged the jury: "It is a rule that a witness swearing positively to a fact is to be believed in preference to many who swear negatively to the same fact, that is, that they did not see or hear it. If the existence of a fact be sworn to positively by one credible witness, and many other witnesses who were in a situation to see or hear it, testify that they did not see or hear it, or know that it transpired, you are bound to regard the testimony given by the witness who swears positively in preference to those who swear negatively." He then detailed the familiar illustration about the clock striking, and the case of *The State vs. Fitzgerald*, in 12th Georgia Reports.

Innis *vs.* The State of Georgia.

Was this charge a fair presentation of the law applicable to cases like this under the facts of this case? Judge Nisbit, in 3 *Kelly,* page 420, says: "The rules of evidence in indictments for rape are different from what they are in ordinary cases. The offense is peculiar. Lord Hale says, 'this accusation is easily made, hard to be proved and harder to be defended by the party accused, notwithstanding his innocence: 1 Hale, 635, 636.' Citing Chitty 3, 572: 'The defendant in consideration of these things is let in, in his defense, to some privileges which are not always allowed to persons accused of crime."

The considerations which are given for the rule is, that the crime is generally in secret, and there is a consequent absence of direct testimony. The evidence of the prosecutrix is admitted, while that of the accused is excluded. Men are, therefore, put in the power of abandoned and vindictive women to a great extent.

Blackstone says: "The party ravished may give evidence upon oath, and is, in law, a competent witness; but the credibility of her testimony, and how far forth she is to be believed, must be left to the jury upon the circumstances of fact concurring in the testimony."

To make out this case against the accused it is necessary to prove that the act was committed by force. *Force to overcome resistance* must have been accompanied by some manifestations of violence. The witness swears she screamed as loudly as she could more than once.

In *Palfus vs. State,* 36 Georgia, 280, where the question was about a disorderly house, and the defense was by parties who lived above and in adjoining rooms, that they did not hear it, the Court says: "It may be that the jury did not give due weight to the testimony on the part of the defendant, from the impression probably that it was altogether negative in its character." Thus laying down the rule that negative testimony, when in affirmance of facts sought to be established, becomes positive.

And in *Bowie & Company vs. Maddox & Goldsmith,* 29 Georgia, 285, this Court, Judge STEPHENS delivering the opinion, held it was error in the Court below to charge the jury, "that circumstances cannot outweigh positive testimony." The Judge says: "We think the Court erred in charging the jury that circumstances could not outweigh direct testimony. Direct or positive testimony might come from a very unreliable person, or coming from a source of great respectability, might yet break down under the weight of its own absurdity. It is impossible, therefore, to fix any uniform value upon direct or positive testimony, as such. It is equally impossible to fix a uniform value upon circumstantial evidence, as such. In many cases the one justly outweighs the other, while in many others the preponderance is precisely reversed."

And again, Judge LUMPKIN, in 26 Georgia Reports, 192, sums up the rule and says: "As to the charge respecting positive and negative testimony, no general rule can be laid down respecting it. It depends upon a variety of circumstances, such as the opportunity of the witnesses for hearing, the attention being directed to the matter, etc." And this principle has been often held in both civil and criminal cases.

In Pollen *vs.* Servy, 10 Bosw., New York, 38, negative testimony was held to be properly weighed by the jury against positive testimony.

In Reeves *vs.* Poindexter & Jones, North Carolina, 308, where A. swears that B, C and D had a conversation, and D swears no such conversation took place, held, the rule giving preference to positive over negative testimony, did not apply.

In Woods *vs.* Studevant, 38 Mississippi, 68, facts and circumstances were held to outweigh the positive testimony of a witness.

The rule as laid down in Alabama, Pool *vs.* Devers, 30 Alabama, 672, is: When one witness swears positively and another negatively, both being credible, greater weight is to be given to the former.

In the case of Coughlin *vs.* The People, 18 Illinois, 266, it was held "the testimony of a witness having a full opportunity of knowing that a person did not strike a blow is affirmative evidence, and entitled to weight as such."

The rule in 27 Alabama, 520, on the effect of positive evidence is, that it is entitled to greater weight.

In the case of the State *vs.* Gates, 20 Mississippi, 5 Bennett, 400, when one witness swore two men on horseback met and had an angry conversation, and another witness swears he saw them meet and .they did not, and the Judge charged that when one witness swears affirmatively and another negatively, the affirmative must prevail, the charge was held to be error. The rule in the case of Coles *vs.* Perry, 7 Texas, 109, is that greater weight will be given to positive than negative testimony.

In 23 Vermont, 186, it is laid down as a rule of law that, other things being equal, positive evidence preponderates over negative evidence; but the Court, in charging the jury, should also direct their attention to the facts and circumstances in the case important to determine its application.

And this, upon the principles found through our decisions, may be asserted as the rule. We are aware of some cases where the expression of the rule is in stronger language, but in others substantially the same. If there be any case where even a spark of evidence should not be excluded from the consideration of the jury, we think it is in cases like the one at bar. The charge of the Court in this case is a strong declaration of the rule, "you are bound to regard the testimony given by the witness who swears positively in preference to those who swear negatively." This language we hold to be too emphatic, and calculated to mislead the jury under the facts in this case.

In *Smith vs. Overby,* 30 *Georgia,* 241, this Court held that, "although a charge be literally correct, still, if the language was calculated to mislead the jury upon a material point, a new trial may be awarded."

We think, under the facts of this case, that the question of guilt or innocence was not to be measured by the character of the proof but by the weight of the proof itself. All the circumstances of the case ought to have been submitted, and the law in regard to what was necessary to establish the charge should have been clearly stated and the jury should have been left to consider for themselves the weight of the evidence in the case.

If the rule laid down be true, then, in cases of this kind, there would scarcely be a defense, except the crime was committed in the presence of others, which is not natural; and even then, if the jury are bound to take a positive witness against many negative ones, the accused would be left at the mercy of the jury. I hold that, while it is the duty of Courts to protect female chastity by every proper protection of the rules of law, still, in cases of this character, care should be taken not to sacrifice justice to sentiment; and negative testimony may be more properly considered by juries to illustrate innocence in this than in other classes of cases; and the instructions of the Court upon its weight as against the positive evidence, particularly if that comes alone from the prosecutrix, should not be technical, but liberal and comprehensive, and leave the question of guilt or innocence to their decision, not upon the theory of an artificial rule, but upon a sound conviction of the truth of the case, to be gathered from every source and circumstance admitted in evidence.

Judgment reversed.

McCay, J., concurred, but furnished no opinion.

Warner, J., dissenting.

The defendant was indicted for the crime of rape on the person of Mary Meyer, a married woman, who, with her husband, went to the office of the defendant (who was a physician,) for the purpose of consulting him in relation to a female complaint, with which she was afflicted at the time.

The defendant took her into his private bed-room for the purpose of making an examination of her person, where the crime was alleged to have been committed. On the trial of the case, the jury found the defendant guilty, when a motion was made for a new trial, on general grounds, which was overruled by the Court. Whereupon, the defendant excepted, and has brought his case before this Court for review. There was no error in the Court below in ruling out the evidence of Mary Meyer (after the same had been admitted) that she had an illegitimate child by one Croft prior to her marriage with her present husband, as such evidence was not competent for the purpose of showing her general bad character at the time the crime was alleged to have been committed. General bad character as to want of chastity cannot be shown by proof of a specific act which occurred long anterior to the commission of the offense.

There was no error in the Court ruling out the evidence of Spencer, the Justice of the Peace, as to what Cloud had sworn on the committing trial before him, as the evidence on that trial had been reduced to writing, and was then before the Court, and was the best evidence as to what the witness did swear on that trial, the more especially as Spencer stated he had no recollection as to what the witnesses did swear except by reference to the record of the evidence then before him.

The charge of the Court to the jury, as to the effect of affirmative and negative testimony, as applicable to the facts proved in this case, was a fair and substantial exposition of the law of evidence upon that question.

After reviewing the entire charge of the Court to the jury, in view of the facts contained in the record, there is no error in that charge, which will, in my judgment, authorize this Court to interfere and grant a new trial. In looking through the entire record, and considering all the grounds taken in the motion for a new trial, I find no error which will entitle the defendant to a rehearing of the case, under the repeated rulings of this Court, on similar motions made on the trial

of criminal cases. And as the presiding Judge was satisfied with the verdict, and there being sufficient evidence in the record to sustain it, if the jury believed the witnesses, who were the exclusive judges of their credibility, this Court ought not to interfere and set it aside. The criminal laws of the State should be firmly executed by the Courts, and when a verdict of guilty has been rendered on competent evidence, that verdict should not be set aside for alleged errors committed on the trial, unless the finding of the jury would have probably been different but for the alleged errors complained of. The *certainty* of punishment for the violation of the public laws of the State is the only safe protection for society, and when the public authorities, charged with the performance of this duty, fail to perform it, those who are injured, either in person or property, will seek to redress their own wrongs instead of appealing to the legal tribunals of the country.