### GEORGE MONROE v. THE STATE.

1. RAPE. *Indictment. Averment as to force.*

   An indictment for rape, averring that the defendant, with force and arms, *violently* ravished, is not objectionable in failing to aver that it was forcibly done.

2. SAME. *Instruction. Discrediting prosecutrix.*

   On a trial for rape, it is proper to refuse an instruction that the jury must weigh the testimony of the prosecutrix with great caution and distrust, and must consider the probability that she would wish to shield herself by accusing another.

3. SAME. *Verdict. Corroboration of prosecutrix. New trial.*

   While a conviction of rape may be had on the uncorroborated testimony of the female, it should always be scrutinized with caution, and where she is unsupported, and the facts and circumstances in evidence discredit her and fail to satisfy the mind as to the guilt of accused, but rather suggest grave doubts of it, a conviction should be set aside.

FROM the circuit court of Warren county.

HON. JOHN D. GILLAND, Judge.

Appellant, a negro, was convicted of the rape of a negro girl eleven years of age.

The indictment charged that the defendant, with force and arms, feloniously and *violently* committed the rape. A demurrer to the indictment, on the ground that it failed to aver that the crime was forcibly committed, was overruled.

On the trial, the prosecutrix testified to the commission of the offense, and that it was forcibly done; that she resisted to the utmost and cried, but that she did not cry aloud, because she knew no one was near enough to hear. Her father and mother were working on the plantation, about a mile from the house. No one was about the house except her younger brother and herself, and she was alone at the time of the alleged assault. This was about noon, when the de-

fendant, who was working for her father, had gone to the house to feed the mules. The defendant admitted the intercourse, but testified that the girl consented. No other person was at the house at the time of the occurrence. One witness testified to having passed there about that time, but heard no noise. The prosecutrix testified that she suffered great pain when ravished by the defendant, and that she had never before had sexual intercourse. Her mother testified that she made an examination of her person, and that there were no evidences of violence, except that the parts were swollen. Another woman, who was present and assisted in the examination, testified that she saw no evidences that the girl was hurt. After the alleged rape, the girl remained at the house, and told no one except her little brother. At night, when her mother returned from work, she met her and told what had occurred.

The court gave several instructions for the state, as to which special complaint seems to have been made, and several for the defendant. The following instructions, asked for the defendant, were refused:

"8. The court instructs the jury that the evidence of the female said to have been raped, unsupported and uncorroborated by other evidence, is insufficient to warrant a conviction of the charge of rape.

"9. The court further instructs the jury that the evidence on a charge of rape must convince the jury that the female did not acquiesce or give tacit consent to the carnal connection, and her evidence as to this should be weighed with great care and caution, and should be supported by other evidence, either circumstantial or direct.

"10. The court instructs the jury that they must weigh the evidence of the prosecuting witness with great caution and distrust, and they must consider the probability that she would wish to shield herself by accusing another."

The defendant was convicted and sentenced to imprisonment in the penitentiary for life. A motion for a new trial

was overruled; hence this appeal. The opinion contains a further statement of the case.

*W. J. Vollor*, for appellant,
Filed an assignment of errors, but no brief.

*Frank Johnston*, attorney-general, for the state.
1. The demurrer to the indictment was properly overruled. It was sufficient to aver that the rape was *violently* committed. 2 Bish. on Crim. Pro., § 959.
2. The court properly refused the eighth, ninth, and tenth instructions asked by the defendant. The testimony of the prosecutrix alone was sufficient to convict.
3. The conviction rests entirely upon the uncorroborated testimony of the prosecuting witness, it is true, but the jury was left to decide whether her statement or that of the defendant was to be believed. Having accepted her statement as true, I do not think the verdict can be disturbed.

CAMPBELL, C. J., delivered the opinion of the court.
No error was committed by the court in the trial of this case, but in our opinion the verdict should not be permitted to stand. It is true that conviction of this detestable crime may be had on the uncorroborated testimony of the person raped, but it should always be scrutinized with caution, and where there is much in the facts and circumstances in evidence to discredit her testimony, it is not sufficient to sustain a verdict of guilty. 1 Hale, 635 *et seq.; Innis* v. *State*, 42 Ga., 473; *People* v. *Hulse*, 3 Hill, 309; 19 Am. & Eng. Enc. L., p. 958.
The observations of the court in *People* v. *Hulse*, 3 Hill, 309, are just and appropriate, and commend themselves to our judgment.
There is much in the testimony of the girl charged to have been raped by the accused, to throw doubt on her testimony. There is not a single corroborating circumstance to support

her statement, and much to suggest its falsity.  Under the Mosaic law, " if the tokens of virginity be not found for the damsel" given in marriage, and complained of as not a maid, she was conclusively held to have played the whore, and was immediately " stoned with stones" to death.  But this damsel, only eleven years old, not only could not have any token of virginity found for her, but examination by her mother and another woman in search of tokens, failed to discover any.  Not only this, which would have been conclusive as to her former whoredom, and caused the ignominious death of a Jewish wife, but no sign of any struggle was shown.  There was no suggestion of any choking or blows to disable, or bruising the arms or wrists, or tearing the clothes of the girl, or the bed-clothes, or any circumstance, even the most trivial, to support her testimony.

The alleged rape occurred at 12 o'clock, noon, and, although it was on a plantation, she made no complaint to any neighbor.  Although there was a horn at hand, the blowing of which was a signal of something unusual having occurred at the house, it was not blown for this unusual (?) occurrence.  The girl waited at home until about night, when, having told her little brother, she says, who said he was going " to tell ma," she went to meet her mother, and told her.  The strong probability is that the account of the affair given by the accused is correct, and that the girl consented, and, having been detected by the little brother, or from some other cause, she determined to tell.  We regard her testimony as incredible, and are not willing for the terrible consequences of the verdict to be visited upon the accused until a fuller investigation shall be had, which will, no doubt, result in his conviction again, if he is guilty.

While profoundly impressed with the necessity for a rigid enforcement of the laws against crime, and particularly those protecting human life, so often disregarded with impunity, we are unwilling to sanction a conviction on evidence which

not only fails to satisfy the mind of the guilt of the accused, but rather suggests grave doubt of it. We might greatly lighten our labors by deferring, in all cases, to the verdict approved by the presiding judge as to the facts, but our duty is " to administer justice without respect to persons, and do equal right to the poor and to the rich " (an obligation which it required no constitutional mandate to impose, and which every judge felt and observed before it was considered necessary to insert it in the oath to be taken), and experience has shown that it sometimes occurs that conviction is had upon testimony that ought not to produce this result; and, hence, our duty to see, in every case, that the verdict is sustained by sufficient evidence, lest injustice be done to the poor or to the rich, both of whom are equally to be protected by the courts against wrong. While both stand alike before the law, and have equal rights, and are entitled to equal protection at the hands of courts and juries, it is an indisputable fact that the poor and humble are less likely to escape conviction by their peers in the jury-box than those who possess the means of surrounding themselves in time of trial with hosts of friends and all the aids and helps to withstand the prosecution.

It is true now as when uttered in words of wisdom thousands of years ago, that " wisdom is a defense, and money is a defense," and its potency is often felt in criminal trials. It is not that the law makes a difference or that judges make a difference or that juries may recognize a distinction on account of riches or poverty, but it results chiefly from the advantage which money gives him who has it over him who has it not in securing its possessor every opportunity for a successful defense. It secures counsel and friends and witnesses, and the benefit of every favorable circumstance to tell in favor of the accused. It is true, in the nature of things, that the man who has ample means of defense has the advantage of him who is less fortunate. Hence, the disposition, which we are not ashamed

to confess we have, to guard jealously the rights of the poor and friendless and despised, and to be astute to protect them, as far as we properly may, against injustice, whether ·proceeding from wilfulness or indifference. In the state of our society, we are admonished of the propriety of constant vigilance on the part of judges to guard against injustice liable to result from passion or prejudice or popular views of the necessity for a vigorous enforcement of the law in certain classes of cases, without due regard in some instances to the merits of the case. Such is the gallantry of our people and their jealous regard for the honor of women, and their universal readiness to protect them and to avenge their wrongs, and especially the most outrageous which can be done one, according to law, and sometimes against law, that there is danger that sentiment may mislead juries, and triumph over right and justice in the class of cases of which this is one, and of which we think this is an example. "Courts and juries cannot well be too cautious in scrutinizing the testimony of the complaining witness, and guarding themselves against the influence of those indignant feelings which are so naturally excited by the enormity of the alleged offense. Although no unreasonable suspicion should be indulged against the accuser, and no sympathy should be felt for the accused if guilty, there is much greater danger that injustice may be done to the defendant in cases of this kind than there is in prosecutions of any other character. The evidence . . . is always direct, and whatever may be the just force of countervailing circumstances, honest and unsuspecting jurors may think themselves bound, of necessity, to credit that which is positively sworn."

*Reversed and remanded.*