RODGERS *v.* STATE.

(In Banc.  June 14, 1948.)

[36 So. (2d) 155.  No. 36897.]

E. K. Windham, of Booneville, and C. B. Hutchinson, of Tupelo, for appellant.

**Greek L. Rice**, Attorney General, by **Geo. H. Ethridge**, Assistant Attorney General, for appellee.

**L. A. Smith, Sr., J.,** delivered the opinon of the court.

Appellant was indicted by the Grand Jury of Lee County on the charge of "forcibly ravishing (a) female of the age of twelve years and upward." Section 2358, Code of 1942. He was convicted and sentenced to the penitentiary for life. He filed a motion for a new trial, and among the grounds set forth therein were the refusal of a continuance because of an absent witness; the exclusion of certain evidence; and "that the verdict of the jury was contrary to the weight of evidence." On appeal, appellant assigned these same matters, and complained of two instructions as errors for which reversal was asked.

The court correctly denied the motion for a continuance because appellant failed to comply with Lamar v. State, 63 Miss. 265, or show that it was impossible to do so.

Appellant, at the trial, offered evidence tending to develop the fact that the cabin which the prosecutrix occupied on this occasion was registered to a certain male companion under a fictitious name, which she then occupied alone for approximately thirty minutes, before the man departed, leaving her in possession thereof. The theory on which appellant based his right to this evidence was "The general rule is that, in prosecutions for rape, evidence of the prior unchasity of the prosecutrix as a substantive defense is inadmissible. Where, however, the defense rests on the fact of consent the character of the prosecutrix for unchastity is competent evidence as bearing on the probability of her consent to the act with which the defendant is charged, and the liklihood of her resisting the advances of any man, on the ground that it is more probable that an unchaste woman assented to such intercourse than one of strict virtue." 22 R. C. L. page 1208. However, on the following page, 1209, the rule as to the method of proof is declared to be that:

"According to the weight of authority the impeachment of the character of the prosecutrix in respect to chastity must be confined to evidence of her general reputation, and she cannot be examined as to particular acts of intercourse with other men, or that fact otherwise proven." See also Gish v. Wisner, 5 Cir., 288 F. 562, to the same effect, a Mississippi case in the Federal Court. In McMasters v. State, 81 Miss. 374, 33 So. 2, we held that it was error to permit the district attorney to cross examine the wife of accused, testifying on behalf of her husband, as to whether or not she was the mother of children born out of wedlock. So, in our judgment, this assignment of error must be overruled.

As to the complaint of certain instructions, appellant says the trial court erred in granting the instruction on the verdicts the jury might return, and the sentence that would follow each, in one particular, and that is, the jury was referred to the inditment for the elements of the crime, whereas the instruction should have set them out within itself. We have condemned such defect in instructions. Upton v. State, 143 Miss. 1, 108 So. 287; Ellis v. State (Miss.) 33 So. (2d) 838. That vice is absent from the challenged instruction here, however, because the first paragraph of the instruction reads of follows: "The court instructs the jury for the State that if you believe from the evidence in this case beyond a reasonable doubt that the defendant Harles Roges, unlawfully, forcibly, and feloniously assaulted Ethel Lorraine Reynolds, a female person over the age of twelve years, and then and there put her in fear of great personal violence, and violently, forcibly and feloniously and against her will, ravished and carnally knew her, the said Ethel Lorraine Reynolds, at the time and place and in the manner and form as charged in the indictment then it is your sworn duty to find the Defendant guilty as charged and you should return one of the following verdicts: . . ." It will be observed that the elements of the crime of rape are set out in detail in the

instruction, and the phrase therein, "at the time and place and in the manner and form as charged in the indictment" obviously cannot be said to refer the jury to the indictment in order to ascertain the elements of the crime charged. We are of the opinion that this assignment of error is without merit.

The appellant also challenges the correctness of the trial in granting this instruction: "The court instructs the jury for the State that when a female submits to sexual intercourse through fear of personal violence and to avoid the infliction of great personal injury upon herself, such carnal knowledge is rape." This instruction correctly defines the law, but appellant argues that it assumes that the prosecutix submitted to sexual intercourse through fear of personal violence and to avoid the infliction of great personal injury upon herself. The case of Newton et al. v. State (Miss.), 12 So. 560, not reported in State Reports, is cited. There was much discussion of this instruction in two conferences of the Court, and some divergence of views, but we have concluded that we would not reverse the trial court in the case at bar for granting the State this instruction.

This brings us now to the assignment of error that the verdict of the jury was against the weight of the evidence. We think there was but slight corroboration of the testimony of the prosecutrix, which in many respects seems unreasonable and incredible. On the contrary, the defense of the appellant was materially and substantially corroborated, and was more natural and reasonable than the evidence against him.

The prosecutrix was married, the mother of one small child, and she and her husband were separated. He had the child, and it was on the mission of seeking custody of this child that brought her from Memphis to Mississippi. She was at the cabin of a tourist court near Tupelo, she said, on the occasion involved, because she was afraid to stay at Pontotoc, where her husband resided. However, she had spent a day and the previous

night in Pontotoc without molestation by her husband. She testified that late in the night of the alleged rape, she was awakened by the din of someone pounding on the door of a cabin next door. The people making the noise then came to her cabin, and inquired for their friend who was supposed to occupy the other cabin, having received no response from him. She told them to go away. Later, that night, however, according to her version, they returned and, claiming to be the sheriff, sought admittance, which she refused. They thereupon forced the screen door, the inner door not being locked, and entered. There were three men, perfect strangers to her. She later learned who they were, she said, and they were jointly indicted, a severance being granted to each. The first one to enter was Jimmy Basham, the next to enter was S. J. Basham, and "the little one was next," that is, the appellant. When they came in, "I screamed," she said. S. J. Basham had the gun, but Harles Rogers, appellant, told her to keep her mouth shut and she would not be hurt. Jimmy and appellant, she says took off her underclothes and had intercourse with her. Here, it is to be noted, that S. J. Basham, had the gun, if gun there were, and he had left the cabin, and no further display of the gun was made, and neither did the prosecutrix emit any further screams. Yet, on the witness stand, she claimed to have consented to intercourse with all three men because her life had been thus originally threatened.

Appellant and his two companions departed, but instead of rushing from the cabin and setting up a hue and cry for these men, the prosecutrix "went to the dresser looking for my purse, fixing to leave." She looked into the billfold, she said, looking for her money, and it was gone. She went to the office, and no one was there; she went to a cabin next to hers, on the other side from the one where the first noise or din was made, and complained that three men attacked her and robbed her. The occupants of this cabin refused to have anything to do with her. The guest to whom it was registered, did not testify

to hearing any scream of the prosecutrix or commotion at her cabin, next door to his. The manager of the court slept not so far from the cabin of the prosecutrix, and he had heard nothing. She said she spent the rest of the night outside, then returned to her cabin and took a nap, and "woke with the sun in my face." After she awakened, she went to Tupelo and complained that she had been robbed and raped.

On cross examination, the following questions to, and answers from, the prosecutrix appear in the record, following her statement about the gun, which she further said was held by S. J. Basham and not by appellant. She also said that S. J. Basham was outside when appellant had intercourse with her.

"Q. Did you resist him in any way? A. No, I didn't."

"Q. You just acquiesced? "A. I did.

"Q. Was anybody holding a gun on you?' A. I didn't notice, they had the gun there.

"Q. Did you see the gun any more? A. No."

The significance of this testimony is at once obvious. The man with the gun had left the cabin, and she did not then resist appellant and his companion, according to her own evidence.

We have gone rather at length into her narrative, in order to set forth the essence of the State's proof. We deem it unnecessary to detail that of the defense, which was a categorical denial of the charge of rape, but an admission of intercourse willingly and spontaneously granted on the part of the prosecuting witness, who readily admitted appellant and his two companions into her cabin, and freely gave her person to them. They went to her cabin, after seeking their friend in one next to hers, and, receiving no response from him, sought to inquire of her if she knew anything of their friend. The light was burning in her cabin. There was no breaking in, no pistol, no scream, no robbery, and only two of them indulged in sexual intercourse with her, she having disgusted S. J. Basham with her lascivious, wanton, lewd

and lustful conduct, as he testified. All three of these men testified. They were corroborated by failure of others nearby to hear any scream, any noise or din, and by her action immediately upon their departure, as set out supra, and in some other minor particulars. As stated we think that the judgment of the trial court should be reversed, and the case remanded for a new trial on the assignment of error that the verdict of the jury was against the weight of the evidence.

It is true that in a trial of a charge against defendants under the section of the code invoked here, we have held that conviction may rest on the uncorroborated testimony of the female. Sanders v. State, 150 Miss. 296, 116 So. 433. However, we do not put reversal here on that ground, but on the reasons stated, supra. In Lawson's work, Leading Cases Simplified, Criminal Law, at page 232, there occurs the following: "And if the woman, though she resists at first, eventually gives in and consents, it is no rape." We add the proviso that the consent must be willing, and free of the initial coercion. In Upton v. State, 192 Miss. 339, 6 So. (2d) 129, we further upheld the rule that a conviction for rape may rest on the uncorroborated testimony of the person charging the rape, but such testimony should be construed with caution, and where there is much in the facts and circumstances to discredit her testimony, another jury should be permitted to pass thereon. This announcement we also followed in the recent case. Richardson v. State, 196 Miss. 560, 17 So. (2d) 799.

This Court in Monroe v. State, 71 Miss. 196, 13 So. 884, 885, also held that while a conviction of rape may be based on the uncorroborated testimony of the female, it should always be scrutinized with caution, and where she is unsupported, and the facts and circumstances in evidence discredit her and fail to satisfy the mind as to the guilt of accused, but rather suggests grave doubt of it, a conviction should be set aside. The opinion approved the following: "Courts and juries cannot well

be too cautious in scrutinizing the testimony of the complaining witness, and guarding themselves against the influence of those indignant feelings which are so naturally, excited by the enormity of the alleged offense. Although no unreasonable suspicion should be indulged against the accuser, and no sympathy should be felt for the accused, if guilty, there is much greater danger that injustice may be done to the defendant in cases of this kind than there is in prosecutions of any other character. The evidence is always direct, and, whatever may be the just force of countervailing circumstances, honest and unsuspecting jurors may think themselves bound, of necessity, to credit that which is positively sworn.''

The judgment of the trial court is reversed and the case remanded for a new trial.

Reversed and remanded.