470 So.2d 703 (1985)
Paul Allen MARR, Appellant,
v.
STATE of Florida, Appellee.
No. AU-499.
District Court of Appeal of Florida, First District.
January 29, 1985.
Rehearing Denied February 27, 1985.
On Rehearing June 14, 1985.
*704 Silas R. Eubanks and T. Whitney Strickland, Jr., Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Gregory G. Costas and Raymond L. Marky, Asst. Attys. Gen., Tallahassee, for appellee.
*708 Before ERVIN, C.J., and MILLS, BOOTH, SMITH, SHIVERS, WENTWORTH, JOANOS, THOMPSON, WIGGINTON, NIMMONS, ZEHMER and BARFIELD, JJ.
On Rehearing En Banc June 14, 1985.
ERVIN, Chief Judge.
Marr appeals from a judgment and sentence imposed for the offense of sexual battery. He raises several issues on appeal, only two require discussion. First, that the trial court erred in holding Section 794.022(2), Florida Statutes, constitutional in that it denied appellant his Sixth Amendment right to confront witnesses by a full and fair cross-examination. Second, that the trial court erred in denying the defendant's requested jury instruction, asking that the testimony of the prosecutrix be rigidly scrutinized, in that the prosecutrix was the sole witness to the alleged act. We affirm as to the constitutional point raised, but reverse and remand as to the second issue.
On March 11, 1982, appellant was charged with the December 25, 1981 sexual battery of K.R. by oral penetration under Section 794.011(3), Florida Statutes (1983).[1] The prosecutrix, a 36-year-old cerebral palsy victim and mother of three children, testified that on December 25, 1981, between 2:00 and 3:00 p.m., while she was at the home of an elderly friend for the purpose of taking her to a Christmas dinner, appellant came from a neighboring house, which he was renting from the elderly friend, and told the prosecutrix that her friend was then in his house having a cup of coffee. The victim related that after she had gone inside the house, appellant grabbed her and stated, "Merry Christmas. Santa Claus didn't come to my house last night, so you are going to be my Christmas present." Appellant and the victim struggled for a while but appellant, brandishing a knife, was able to force her to undress. The victim recounted that she told appellant she did not want to engage in sexual intercourse because she was then having her menstrual period. Appellant replied, "Well, there are other ways ...", and then forced her to perform oral sex with him. After a short while, the victim bit appellant's penis, grabbed his testicles and was able to make her escape, proceeding immediately to her church where she met her boyfriend. The victim told him that the elderly friend was not at home, but did not then advise him about the incident which occurred at appellant's house. She testified that she had not planned to report the incident, but, during the days that followed, she received several threatening telephone calls from an unidentified person who reported to her details concerning the sexual battery. Finally, on January 2, 1982, an unidentified person assaulted and threatened her outside of her home. After the last incident, the victim notified the police of the sexual battery.
Appellant admitted at trial that he had seen the victim at his home on December 25, 1981, but denied sexually battering her, as well as the subsequent assault and harassing telephone calls. The defense also presented several witnesses, including appellant's wife, who stated that nothing unusual occurred at appellant's home on the day in question. The prosecution introduced no physical evidence, such as laboratory tests or fingerprints which would have established the contrary. In fact, there was no other evidence corroborating the victim's account of the incident.
Appellant first contends that the trial judge erred in holding constitutional section 794.022(2), because it denied appellant *705 his constitutional right of a full and fair cross-examination of the prosecutrix, as guaranteed to him by the Sixth Amendment of the United States Constitution. Section 794.022(2) provides in part that specific instances of prior consensual sexual activity between the victim and any person other than the offender is afforded admissibility: (1) when such evidence may prove that the defendant was not the source of semen, pregnancy, injury, or disease; or (2) when such evidence tends to establish a pattern of conduct or behavior on the part of the victim and only when it is relevant to the issue of consent. These two exceptions to the inadmissibility of prior consensual sexual acts of the victim are clearly inapplicable to the case at bar.
Appellant, in an effort to establish that the victim had fabricated the sexual assault, proffered evidence outside the presence of the jury relating to sexual intimacy between the victim and her boyfriend. The purpose of the proposed line of questioning was to demonstrate bias on the part of the state's only key witness. Although the trial judge ruled that this line of questioning was inadmissible, because it was barred by section 794.022(2), he permitted appellant to inquire generally about the victim and her loved one's close relationship, barring, however, references to specific sexual acts. Upon cross-examination in the presence of the jury, the victim admitted that her relationship with her companion was very close; that she was very much in love and respected his judgment. The friend in turn testified that he knew the appellant, and also knew that appellant had contacted the state attorney, and had reported information regarding the commission by him of an alleged criminal offense, which had precipitated an investigation. Even so, he stated that he did not harbor any animosity towards appellant.
We disagree that appellant was prejudiced by the limited inquiry. The general rule of law regarding cross-examination of witnesses is as follows:
All witnesses are subject to cross examination for the purpose of discrediting them by showing bias, prejudice or interest, and this is particularly so where a key witness is being cross-examined... .
The sixth amendment right to confrontation of witnesses requires that a defendant in a state criminal case be allowed to impeach the credibility of a prosecution witness by cross-examination to show bias. Denial of effective cross-examination in such circumstances is constitutional error.
Hannah v. State, 432 So.2d 631, 632 (Fla. 3d DCA 1983) (e.s.). See also Watts v. State, 450 So.2d 265 (Fla. 2d DCA 1984). Our research in this area has revealed only one Florida case directly interpreting the interrelationship between the Florida rape shield statute  restricting the admissibility of prior consensual sexual acts of the victim  with the defendant's right to a full and fair cross-examination, as guaranteed by the Sixth Amendment for the purpose of establishing bias on the part of a key witness. In Kaplan v. State, 451 So.2d 1386, 1387 (Fla. 4th DCA 1984), the court cautioned: "We recognize, however, that the defendant's right to full and fair cross-examination, guaranteed by the Sixth Amendment, may limit the statute's application when evidence of the victim's prior sexual conduct is relevant to show bias or motive to lie."
A review of recent Massachusetts case law, interpreting a similar rape-shield statute, is instructive.[2] In Commonwealth v. *706 Joyce, 382 Mass. 222, 415 N.E.2d 181, 185 (1981), the Supreme Judicial Court of Massachusetts stated:
We do not believe that the prohibition in the rape-shield statute sweeps so broadly as to render inadmissible evidence of specific instances of a complainant's sexual conduct in situations when that evidence is relevant to show the complainant's bias.

(e.s.) In Joyce, the defendant, as here, had claimed that the trial judge erred in excluding evidence of the complainant's prior sexual acts, which was relevant to the issue of bias, thereby denying him his right to confront witnesses. The Supreme Judicial Court of Massachusetts, although avoiding the defendant's constitutional contention by holding that the judge misapplied the Massachusetts rape-shield statute, conceded that serious constitutional doubts are raised when such a statute is construed as excluding any evidence relevant to a rape complainant's bias.
Our case is analogous to a later Massachusetts case, Commonwealth v. Elder, 389 Mass. 743, 452 N.E.2d 1104 (1983), in which the court, while recognizing the broad scope of examination guaranteed by the confrontation clause, concluded that the trial judge had properly excluded evidence of prior sexual conduct of the victim and her boyfriend, offered for the purpose of establishing an escalating hostility towards the defendant. There the defendant sought to introduce evidence disclosing that the complainant had fabricated rape charges against him in order to prevent him from interfering with her intimate relations with her boyfriend. "At trial, the judge permitted the defendant to introduce [some] evidence of hostility between the complainant and the defendant", without introducing complainant's prior sexual history. Commonwealth v. Elder, 452 N.E.2d at 1109. The reviewing court concluded that "[s]ince the defendant was able to establish bias without the proffered evidence, ... [t]he judge properly limited the scope of the evidence after adequate exposure on the issue of bias, and he gave proper attention to `the important policies underlying the rape-shield statute' as well as the confrontation clause." 452 N.E.2d at 1109, 1110.
In the case at bar, the trial judge allowed testimony relating to the facts that the prosecutrix and her friend were in love, as well as the closeness of their relationship. We consider that under the circumstances he struck a proper balance between the policies undergirding the statute, and those of the confrontation clause, by allowing evidence as to the bias of the prosecutrix, without permitting specific references to sexual intimacies. In so doing, the lower court did not completely foreclose the defendant's right to conduct an effective cross-examination for the purpose of exposing any lurking bias of the key witness. "Where evidence of bias is available by other means," the exclusion of prior consensual sexual acts relevant to a showing of the prosecutrix's bias does not raise serious constitutional problems.[3]Commonwealth v. Elder, 452 N.E.2d at 1110. Similarly, we find that section 794.022(2) is constitutional as applied to the facts before us.
Appellant also contends that the trial court erred in denying the appellant's requested jury instructions, asking that the testimony of the prosecutrix be rigidly scrutinized, since she was the sole witness to the alleged act. We agree. Appellant's *707 requested jury instruction was couched in the following language:
In a case where no other person was an immediate witness to the alleged act, the testimony of the prosecutrix should be rigidly scrutinized.
The trial judge denied the request and gave the standard jury instruction on judging the credibility of witnesses.[4]
In determining whether the standard jury instructions generally cover the scope of a requested instruction, our sister court in Moody v. State, 359 So.2d 557, 560 (Fla. 4th DCA 1978), has offered the following comments: "A trial judge should generally adhere to the Standard Jury Instructions; however, he is not relieved from his obligation to determine whether the standard instructions accurately and adequately state the relevant law." (e.s.) Indeed, the Florida Supreme Court itself authorizes a departure from the standard form in the event the form is deemed "erroneous or inadequate." Fla.R.Crim.P. 3.985.
We consider that the standard instruction, given in the case at bar, set out in n. 4, supra, did not adequately apprise the jury of the law relevant to a situation in which the victim is herself the only witness to the crime, and her bias is placed in issue. Although the law is well established that a rape victim's testimony requires no corroboration, such "`testimony must be carefully scrutinized so as to avoid an unmerited conviction.'" Tibbs v. State, 337 So.2d 788, 790 (Fla. 1976) (e.s.)[5] (quoting from Thomas v. State, 167 So.2d 309, 310 (Fla. 1964)). We therefore conclude that, because of the unique circumstances present in a close case such as this, in which the harmless error rule obviously cannot be applied, the lower court's refusal to give the requested instruction must be deemed an abuse of discretion, requiring reversal.
We recognize that there is contrary authority on this point. In Pendleton v. State, 348 So.2d 1206 (Fla. 4th DCA 1977), the court held that the trial judge did not abuse his discretion in using the standard jury instruction, rather than a special instruction involving a sexual battery under section 794.011. Accord, Hicks v. State, 388 So.2d 357 (Fla. 2d DCA 1980); Williamson v. State, 338 So.2d 873 (Fla. 3d DCA 1976). We consider, however, that each case must rest on its own particular facts in gauging the propriety of giving a requested instruction. In the case at bar, not only did the prosecution rely completely on the testimony of the alleged victim, it failed to perform any laboratory tests or doctor's examinations of her, due to her week-long delay in reporting the incident.
AFFIRMED in part, REVERSED in part, and REMANDED for further consistent proceedings.
MILLS and ZEHMER, JJ., concur.

ON REHEARING EN BANC
BOOTH, Judge.
The Court, by majority vote, has determined that this case involves an issue of exceptional importance under Rule 9.331, Florida Rules of Appellate Procedure, as amended effective January 1, 1985, Re Rules of Appellate Procedure, 463 So.2d 1114 (Fla. 1984), and therefore convened an en banc conference for consideration of appellee's motion for rehearing en banc of the panel decision released January 29, 1985.[1]
After en banc consideration, the majority of the court en banc has voted that the panel decision, insofar as it requires the giving of an instruction to the jury that, where there are no witnesses to the alleged act, testimony of a rape victim should be "rigidly scrutinized," is erroneous and is disapproved. The majority of the Court en banc is of the view that the trial court did not err in refusing to give that instruction[2] and votes to affirm the judgment below. That portion of the panel decision dealing with Issue II and holding that the requested jury instruction should have been given is, therefore, vacated. In all other respects, the decision of the panel is adopted as the decision of the en banc Court.
The facts are as related in the panel decision. The appellant requested the following jury instruction be given:
In a case of this kind where no other person was an immediate witness to the alleged act, the testimony of the prosecutrix should be rigidly scrutinized.
Cases cited in support of this instruction were: Tibbs v. State, 337 So.2d 788 (Fla. 1976); Thomas v. State, 167 So.2d 309 (Fla. 1964); and Berezovsky v. State, 335 So.2d 592 (Fla. 3d DCA 1976).
The trial court denied the requested instruction, with a notation that it was "covered by standard form of instruction." The trial court gave the following standard instruction:[3]
It is up to you to decide what evidence is reliable. You should use your common sense in deciding which is the best evidence, and which evidence should not be relied upon in considering your verdict. You may find some of the evidence not reliable, or less reliable than other evidence.
You should consider how the witnesses acted, as well as what they said. Some things you should consider are:
1. Did the witness seem to have an opportunity to see and know the things about which the witness testified?
2. Did the witness seem to have an accurate memory?
3. Was the witness honest and straightforward in answering the attorneys' questions?
4. Did the witness have some interest in how the case should be decided?
5. Does the witness' testimony agree with the other testimony and other evidence in the case?
6. Did the witness at some other time make a statement that was inconsistent with the testimony he or she gave in court?
You may rely upon your own conclusion about the witness. A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness.
The foregoing instruction is applicable to testimony of victims, male or female, of a sex crime or any other crime whether or not their testimony is corroborated. It is *709 sufficient in this case. The instruction requested by defendant below, singling out the prosecutrix in a rape case for judicial comment on the credibility of her testimony, is plainly erroneous and not the law of this state.
Language similar to that in question has its genesis with Sir Matthew Hale[4] (1609-1676), Lord Chief Justice of England under Charles II, and has been referred to as "the caution of Lord Hale." Magwire v. People, 77 Colo. 149, 235 P. 339 (1925). In the earliest reported decision in Florida Doyle v. State, 39 Fla. 155, 22 So. 272 (1897), the Supreme Court, affirming a rape conviction, roundly rejected the following cautionary instruction:
[T]his is an accusation easy to make and hard to be defended by the accused, though he be never so innocent; and hence the law is that you should receive with more than ordinary doubt and suspicion the evidence of the prosecutrix.
In Doyle, the Florida Supreme Court held (22 So. at 273-274):
The court may, and should whenever necessary, in all criminal trials, caution the jury against convictions from prejudice or upon insufficient evidence; but it is not a rule of law that the jury must view the offense of rape as a most heinous one, or one well calculated to create strong prejudice against the accused, or that the attention of the jury be specially directed to the difficulty growing out of the usual circumstances of the crime in defending against rape; nor is it a rule of law that rape is an accusation easy to make, and hard to be defended by an accused, though he be never so innocent. In the case of Crump v. Commonwealth (Va.) [98 Va. 833] 23 S.E. 760, it is said that instructions of this nature are merely statements of the conclusions of the judicial mind from experience in the trial of this class of offenses rather than enunciations of principles of law, and that the oft-repeated observation of Lord Hale, included in the fourth instruction, was entirely proper by way *710 of argument to the jury, but not as an independent instruction of law from the court.

... .

The fourth instruction stated the law to be that a jury should receive with more than ordinary doubt and suspicion the evidence of the prosecutrix in prosecutions for rape. As without the testimony of the prosecutrix no conviction could have been had in this case, and the court charged the jury that they must give defendant the benefit of all reasonable doubts, it is apparent that, had the court given this instruction, the whole controversy would have been resolved into this proposition: The defendant is entitled to the benefit of all reasonable doubts; his guilt is proven only by the prosecutrix; her testimony must be received with extraordinary doubt and suspicion; therefore defendant is entitled to a verdict. If, in any case, it is proper for the court to instruct the jury that they should scrutinize the testimony of the prosecutrix with caution, no authority can be found to sustain the proposition that such testimony must, as a matter of law, be received with more than ordinary doubt and suspicion. Monroe v. State,[[5]] 71 Miss. 196, 13 South. 884; 2 Bish.Cr. Proc. § 968,[[6]] 3 Greenl.Ev. § 212.[[7]] The judge has no power to instruct the jury as to the weight of evidence, but only as to the rule. Williams v. Dickenson, 28 Fla. 90, 9 South. 847.[[8]] [emphasis added]
Subsequently, however, Florida appellate court opinions contained language similar to that of the requested instruction that the testimony of the prosecutrix in a rape trial be scrutinized, and these cases are relied on by defendant. Tibbs v. State, 337 So.2d 788 (Fla. 1976); Thomas v. State, 167 So.2d 309 (Fla. 1964); and Berezovsky v. State, 335 So.2d 592 (Fla. 3d DCA 1976). In each instance, the language appears in connection with appellate review of the sufficiency of the evidence.[9]
*711 All of the cases were decided under the law as it existed prior to the repeal of Section 794.01, Florida Statutes, "Rape,"[10] and prior to the elimination from the Florida Standard Jury Instructions of a special instruction relating to the testimony of the prosecutrix in a rape case.[11] None of the foregoing cases have a jury instruction issue and none held it was error to fail to give an instruction of the type requested here.[12] Further, the Florida Evidence Code, adopted since decisions relied on by defendant, codifies the law in Section 90.106 as follows:[13]
A judge may not sum up the evidence or comment to the jury on the weight of the evidence, the credibility of the witnesses, or the guilt of the accused.
*712 Cases are legion in annotation under Section 90.106, supra, that the judge must avoid any expression of opinion on the credibility of a witness. Since both the legislative and judicial branches have "spoken," eliminating and superseding the type of instruction requested here, it is unnecessary for the purpose of this case to determine whether the question is one properly within the legislative or the judicial sphere.
The requested instruction, if ever a correct statement of the law and proper as a jury instruction, is no longer. We hold, therefore, that the trial court below did not err in refusing to give the requested instruction, and in other respects we also affirm the judgment below for the reasons stated by the panel in its decision.
The court certifies the following question as being of great public interest:
IN A TRIAL ON A CHARGE OF SEXUAL BATTERY, WHERE THE SOLE IMMEDIATE WITNESS TO THE ALLEGED ACT IS THE PROSECUTRIX, DID THE TRIAL COURT ERR IN REFUSING TO GIVE THE FOLLOWING INSTRUCTION REQUESTED BY DEFENDANT: "IN A CASE OF THIS KIND, WHERE NO OTHER PERSON WAS AN IMMEDIATE WITNESS TO THE ALLEGED ACT, THE TESTIMONY OF THE PROSECUTRIX SHOULD BE RIGIDLY SCRUTINIZED."?
MILLS, SHIVERS, WENTWORTH, JOANOS, THOMPSON, WIGGINTON, NIMMONS and BARFIELD, JJ., concur.
SMITH, J., specially concurs with written opinion.
ERVIN, C.J., dissents with written opinion, in which ZEHMER, J., concurs and SMITH, J., concurs in part.
SMITH, Judge, specially concurring.
I concur in the majority's disposition of the appeal on the merits. However, I voted against consideration of this case en banc because I did not consider the issue to be one which merited invocation of the "exceptional importance" basis for full court participation. I am in substantial agreement with Chief Judge Ervin's call for sparing use of the "exceptional importance" ground (see, dissenting opinion by Ervin, C.J.), even if this means that on occasion we must recognize the right of a three-judge panel to be  in our opinion  wrong.
ERVIN, Chief Judge, dissenting.
On the ground of exceptional importance, provided by Florida Rule of Appellate Procedure 9.331, a majority of the full court now vacates the panel decision filed January 29, 1985. In so doing, the majority apparently decides that not only did the trial court not abuse its discretion in denying the requested instruction, but that in fact it had no discretion to so instruct under any circumstances; therefore the panel's opinion, holding the trial court's refusal to be an abuse of discretion, was in error. The majority's decision relies essentially upon the following judicial and legislative changes: (1) The repeal of Section 794.01, Florida Statutes (rape and forcible carnal knowledge), by Chapter 74-121, Section 1, Laws of Florida (2) the amendment of Section 794.022, Florida Statutes, by Chapter 83-258, Section 1, Laws of Florida, deleting certain language permitting the court to instruct the jury "with respect to the weight and quality of the evidence ..."; (3) the adoption of the Florida Evidence Code, particularly section 90.106, forbidding any comment by the trial judge regarding the weight of the evidence or the credibility of the witnesses; and (4) the omission from the Florida Standard Jury Instructions by Standard Jury Instructions in Criminal Cases, 327 So.2d 6 (Fla. 1976), of a special instruction relating to the testimony of the prosecutrix in a rape case.
If the effect of the majority's opinion is to interpret the above statutory changes as disallowing any discretionary comment by a trial judge upon the uncorroborated testimony of the victim in a sexual battery case, then I strongly dissent. Nothing in Sections 794.01 or 794.022, Florida Statutes, before repeal or after amendment, *713 contained any language similar to that in the requested instruction. Moreover, the amendments do not on their face require any judicial interpretation that the legislature intended to take from trial judges the discretion to instruct juries, in appropriate cases, that the uncorroborated testimony of the prosecutrix should be rigidly scrutinized in order to avoid an unmerited conviction.
If the legislative amendments can, as the majority apparently concludes, properly be interpreted as expressing an intent to curb the inherent powers of the courts to so instruct,[1] in my judgment they should then be deemed to represent an interference with the exercise of the judicial powers, and considered violative of Article II, Section 3 of the Florida Constitution, prohibiting one branch from exercising powers pertaining to either of the other branches, unless expressly provided therein by the constitution.
The court's right to instruct the jury as to the law to be applied to the case, free from legislative encroachment, is exemplified by the following statements from Simmons v. State, 160 Fla. 626, 36 So.2d 207, 208 (1948):
When the State has carried the burden which rests upon it, the jury must apply the law in charge to the facts thus shown to be true in order to arrive at a verdict conformable to law. Hence the sole function of the court's charge is properly to inform the jury concerning the rules of law applicable to the facts in dispute. If the court is required to depart from this course and discuss matters having no bearing on the true function of the jury, the trial necessarily is disconcerted and impeded.
The preservation of the inherent powers of the three branches of government  legislative, executive, and judicial  free from encroachment or infringement by one upon the other, is essential to the safekeeping of the American system of constitutional rule.
This statement is found (11 Am.Jur., p. 908):
"Any legislation that hampers judicial action or interferes with the discharge of judicial functions is unconstitutional."
This statement is also found (16 C.J.S., Constitutional Law, § 128, page 330):
"Although the legislature may regulate the procedure of trial courts with respect to instructions to juries, it cannot abridge the power of the judge to charge the law, and direct a verdict where the facts are undisputed; nor can it require the court to instruct the jury without regard to the evidence offered." (Italics supplied.)
Simmons' quote from Corpus Juris Secundum, that the separation of powers doctrine is not affected by the legislature's *714 regulation of the procedure[2]  as opposed to its attempted control over the instructions of the law to be applied to the facts in dispute  regarding jury charges is exemplified by the supreme court's approval of an early statute directing that instructions be conducted before oral arguments. Keen v. State, 89 Fla. 113, 103 So. 399 (1925). Compare Section 918.10, Florida Statutes, and Florida Rule of Criminal Procedure 3.390, requiring that charges be given at the conclusion of arguments of counsel.[3]
In other contexts the supreme court has held that the weight a trial court or an appellate court of general jurisdiction should give to the verdict of a jury is a judicial matter that cannot be controlled by legislative enactment, State v. Aetna Casualty & Surety Co., 84 Fla. 123, 92 So. 871, 873 (1922); that the grant or denial of a motion for new trial in a litigated cause necessarily involves judicial power and discretion, therefore the legislature has no constitutional power to regulate such discretion, Ruff v. Georgia S. & F.Ry. Co., 67 Fla. 224, 64 So. 782 (1914). On the other hand, a statute may survive an attack against it as being violative of separation of powers as long as it does not take from the courts the final discretion to act. State v. Benitez, 395 So.2d 514, 519 (Fla. 1981).
As to the majority's reliance upon section 90.106  barring comments by the trial court regarding the weight of the evidence and the credibility of witnesses  as support for its position that a trial judge no longer has any discretion to give the requested instruction, I would simply observe that this statute has never  even since the adoption of the Evidence Code  been interpreted as precluding all judicial comments upon the credibility of witnesses. For example, the standard jury instructions continue to recognize that a trial judge retains the right to instruct the jury that it "should use great caution in relying on the testimony of a witness who claims to have helped the defendant commit a crime[.]" Florida Standard Jury instruction (Criminal) 2.04(b).
The preferred construction of the above statutes, in my judgment, is simply to acknowledge them as being declaratory of the general, judicial rule that judges should ordinarily refrain from expressing comments relating to the weight, character or credibility of the evidence adduced, Abrams v. State, 326 So.2d 211 (Fla. 4th DCA 1976); Raulerson v. State, 102 So.2d 281 (Fla. 1958); Gans v. State, 134 So.2d 257 (Fla. 3d DCA 1961), but not as divesting a trial judge from exercising his or her inherent discretion to so instruct when the standard instructions do not adequately inform the jury of the relevant law.
The majority also refers to the deletion from the Florida Standard Jury Instructions of that language which had formerly permitted a comment by the court to the jury in rape cases to examine rigidly the uncorroborated testimony of the victim, Standard Jury Instructions in Criminal Cases, 327 So.2d 6 (Fla. 1976), as support for its thesis that discretion to give even a requested instruction along the lines of the language in the former standard instruction is no longer authorized. Surely the majority has not overlooked the language in the supreme court's order, accompanying the revised instructions, stating:
Similarly, the Court recognizes that no approval of these instructions by the Court could relieve the trial judge of his responsibility under the law properly, and correctly to charge the jury in each case as it comes before him. This order is not *715 to be construed as any intrusion on that responsibility of the trial judges.
Id. By analogy, the instruction on circumstantial evidence, formerly listed in the standard instructions, has also been omitted, In re Standard Jury Instructions in Criminal Cases, 431 So.2d 594 (Fla. 1981), yet a trial judge still retains authority in a proper case to give such instruction if he or she considers it appropriate due to the particular facts involved. Williams v. State, 437 So.2d 133 (Fla. 1983); Rembert v. State, 445 So.2d 337 (Fla. 1984); Ruzicka v. State, 430 So.2d 528 (Fla. 4th DCA 1983), rev. denied, 440 So.2d 353 (Fla. 1983).
The discretion vested in a trial judge to instruct the jury on the relevant law is reflected also in Florida Rule of Criminal Procedure 3.985, pertaining to standard jury instructions, allowing a trial judge, in the event that he or she considers the standard forms erroneous or inadequate, to "modify or amend such form or give such other instruction as the trial judge shall determine to be necessary accurately and sufficiently to instruct the jury in the circumstances of the case... ." The rule, since its inception, effective May 27, 1970, In re Standard Jury Instructions in Criminal Cases, 240 So.2d 472 (Fla. 1970), has consistently recognized the trial judge's inherent discretionary right to deviate from the forms under the circumstances described. See also In re Standard Jury Instructions in Criminal Cases, 431 So.2d 594 (Fla. 1981).
I can find nothing in any of the amendments to the Standard Jury Instructions in Criminal Cases which remotely suggests that a trial judge no longer possesses the discretion to instruct the jury, in a proper case, as to the weight and quality to be accorded to the prosecutrix's uncorroborated testimony at trials involving the offense of sexual battery. Indeed, as reflected in the majority's opinion (ante at 709-711, n. 9), language similar to that requested by appellant has frequently appeared in the context of cases involving appellate review of the sufficiency of the evidence. Additionally, in an early case, the supreme court specifically held that a trial court erred in refusing to instruct the jury that an uncorroborated victim's testimony in a rape trial should be carefully scrutinized. Christie v. State, 94 Fla. 469, 114 So. 450 (1927). This holding has never been expressly repudiated by the Florida Supreme Court, and I consider, that until that court holds such a requested charge cannot under any circumstance be given, we have no authority to take a contrary position to that stated by a superior court.
It may be that the original panel's decision in the present case was incorrect, simply for the reason that the requested instruction was not required because it was adequately covered by the standard instruction given. Cf. Rotenberry v. State, 468 So.2d 971, 972 (Fla. 1985) (standard jury instruction on entrapment adequate, in combination with the general reasonable doubt instruction). If this, however, is the only basis on which the full court, in the name of exceptional importance, can use to invoke an en banc proceeding, the court's decision departs from a long line of federal cases placing a far different construction on the federal en banc rule.
Florida's en banc rule was initially patterned after the en banc rule of the United States Court of Appeals for the Fifth and Eleventh Circuits. See Committee Note to Florida Rule of Appellate Procedure 9.331, 32 F.S.A. at 533. As originally adopted, the only ground for an en banc proceeding was "to maintain uniformity in the court's decisions." In re Rule 9.331, Florida Rules of Appellate Procedure, 374 So.2d 992, 993 (Fla. 1979). The exceptional importance standard was added by the supreme court's amendment to the rule, effective January 1, 1985. The Florida Bar Re: Rules of Appellate Procedure, 463 So.2d 1114 (Fla. 1984). The two expressed grounds for en banc consideration now provided in rule 9.331, also appear in Federal Rule of Appellate Procedure 35. The law is clear that if a state rule is designed after the language of its federal counterpart, the rule will take the same construction in Florida courts as its prototype has been given, *716 insofar as such construction comports with the spirit and policy of the Florida law relating to the same subject. Pasco County School Board v. Florida Public Employees Relations Commission, 353 So.2d 108, 116 (Fla. 1st DCA 1977).
The federal cases instruct that only the "truly extraordinary cases" merit en banc treatment, Boraas v. Village of Belle Terre, 476 F.2d 806, 829 (2d Cir.1973) (statement of Mansfield, J.). Such cases involve "issue[s] likely to affect many other cases"  issues of real significance to the legal process as well as to the litigants. Walters v. Moore-McCormack Lines, Inc., 312 F.2d 893, 894 (2d Cir.1963) (statement of Lumbard, C.J.) (emphasis supplied). See also Gilliard v. Oswald, 557 F.2d 359 (2d Cir.1977) (statement of Kaufman, C.J.); United States v. Rosciano, 499 F.2d 173, 174 (7th Cir.1974) (en banc). Moreover, rule 35 may not be used "`merely' to correct individual injustices or mistakes". Galella v. Onassis, 487 F.2d 986, 1005 (dissenting opinion), quoting Eisen v. Carlisle & Jacquelin, 479 F.2d 1005, 1021-1022 (2d Cir.1973) (dissenting opinion).[4]
The need for judicial restraint in invoking the en banc mechanism is readily understood. Because a request for en banc consideration engages the attention of every active judge, consideration of a case en banc drains judicial resources, while burdening the litigants with added expense and delay. The following statement by Chief Judge Kaufman in Gilliard v. Oswald is as applicable to Florida's appellate courts as it was and remains applicable to the federal judiciary:
The future effectiveness of the overburdened federal courts depends in large measure upon wise allocation of judicial energy. Extension of the en banc rehearing procedure in an era of increasingly congested dockets is an extravagance we simply cannot afford. F.R.A.P. 35 instructs that the en banc mechanism is "not favored" and strictly limits its use to cases of "extraordinary importance" or to resolve a clear and direct conflict between the decisions of different panels of the court. In practice en bancs are time-consuming and cumbersome, and only rarely produce dispositive resolution of major, recurring issues. The proliferation of opinions which is not rare in an en banc decision, usually obfuscates rather than clarifies. Ordinarily, I do not believe a judge should cast a vote for reconsideration by the entire court merely because he disagrees with the result reached by the panel. As I have indicated, Rule 35 was not adopted to provide that luxury.
557 F.2d at 359 (emphasis supplied).
In my judgment the majority's decision en banc represents little more than selective disagreement with the panel's decision  the latter opinion having little precedential value, because it was clearly limited to the particular facts appearing in the record. On evidence showing not only that the victim's testimony was uncorroborated, but also the potential existence of bias against the appellant by the victim, the panel decided that the lower court's refusal to give the charge requested was error. The panel's decision can hardly be considered one involving an "issue likely to affect many other cases."
Unless we establish exacting guidelines for our election to proceed en banc on the ground of exceptional importance, similar to the criteria that have been carefully developed by the federal judiciary during its greater experience with its own rule, our opinions will continue to be, as the present case illustrates, indiscriminately decided by the full court, contrary to the provisions of Article V, Section 4(a) of the Florida Constitution, placing such authority in three-judge panels. The investment in time and judicial resources could prove incalculable. The majority's decision offers no standards for the proper exercise of its *717 en banc discretion, and as such it can only cause confusion regarding how the exceptional importance principle should be applied in future cases.
NOTES
[1] Section 794.011(3), Florida Statutes (1983), states:

A person who commits sexual battery upon a person over the age of 11 years, without that person's consent, and in the process thereof uses or threatens to use a deadly weapon or uses actual physical force likely to cause serious personal injury shall be guilty of a life felony, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[2] The Massachusetts rape-shield statute provides:

Evidence of the reputation of a victim's sexual conduct shall not be admissible in any investigation or proceeding before a grand jury or any court of the commonwealth for a violation of sections twenty-two, twenty-two A, twenty-three, twenty-four and twenty-four B of chapter two hundred and sixty-five. Evidence of specific instances of a victim's sexual conduct in such an investigation or proceeding shall not be admissible except evidence of the victim's sexual conduct with the defendant or evidence of recent conduct of the victim alleged to be the cause of any physical feature, characteristic, or condition of the victim; provided, however, that such evidence shall be admissible only after an in camera hearing on a written motion for admission of same and an offer of proof. If, after said hearing, the court finds that the weight and relevancy of said evidence is sufficient to outweigh its prejudicial effect to the victim, the evidence shall be admitted; otherwise not. If the proceeding is a trial with jury, said hearing shall be held in the absence of the jury. The finding of the court shall be in writing and filed but shall not be made available to the jury.
Mass.Gen.Laws ch. 233, § 21B, inserted by ch. 110, Statutes (1977).
[3] We caution that if, in a particular case, there is a complete foreclosure of cross-examination sought to disclose bias on the part of a key witness, serious constitutional problems might arise.
[4] The jury instruction, which followed almost verbatim that provided in section 204, Florida Standard Jury Instructions in Criminal Cases, was as follows:

It is up to you to decide what evidence is reliable. You should use your common sense in deciding which is the best evidence, and which evidence should not be relied upon in considering your verdict. You may find some of the evidence not reliable, or less reliable than other evidence.
You should consider how the witnesses acted, as well as what they said. Some things you should consider are:
1. Did the witness seem to have an opportunity to see and know the things about which the witness testified?
2. Did the witness seem to have an accurate memory?
3. Was the witness honest and straight-forward in answering the attorneys' questions?
4. Did the witness have some interest in how the case should be decided?
5. Does the witness' testimony agree with the other testimony and other evidence in the case?
* * * * * *
You may rely upon your own conclusion about the witness. A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness.
[5] We are not unaware that the Tibbs decision, which reversed the defendant's conviction due to the lack of evidentiary weight, was later disapproved by the same court. Tibbs v. State, 397 So.2d 1120, 1126 (Fla. 1981). The later opinion, however, did not address the impropriety of refusing to give a requested instruction similar to that before us.
[1] Notice of this determination was provided to the parties by order of the court dated March 25, 1985.
[2] Pendelton v. State, 348 So.2d 1206 (Fla. 4th DCA 1977); Hicks v. State, 388 So.2d 357 (Fla. 2d DCA 1980); and Williamson v. State, 338 So.2d 873 (Fla. 3d DCA 1976).
[3] Section 2.04, Florida Standard Jury Instructions in Criminal Cases, 2d Ed.
[4] Volume 11, Encyclopedia Britannica (1963), at 91:

HALE, SIR MATTHEW (1609-1676), lord chief justice of England under Charles II and one of the most learned and capable lawyers in English legal history....
... .
... The principal blot on his record involves the conviction of two women for witchcraft in 1661 or 1662. Hale presided at the trial and expressed "no doubt at all" of the existence of witches, a view already rejected by many educated men of the day.
Monroe v. State, 71 Miss. 196, 13 So. 884 (1893):
No error was committed by the court in the trial of the case, but in our opinion the verdict should not be permitted to stand. It is true that conviction of this detestable crime may be had on the uncorroborated testimony of the person raped, but it should always be scrutinized with caution; and, where there is much in the facts and circumstances in evidence to discredit her testimony, it is not sufficient to sustain a verdict of guilty. 1 Hale, P.C. 635 et seq.;... . [emphasis added]
Annot., 130 A.L.R. 1489 (1941):
Cautionary instructions to the effect that charges of sexual offenses are easily made and difficult to disprove have their genesis in a statement made by Sir Matthew Hale (1 Pleas of the Crown (1st Amer. ed.) 634) in his discussion of proof of rape, and is as follows: "It is true, rape is a most detestable crime, and therefore ought severely and impartially to be punished with death; but it must be remembered that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, though never so innocent." As shown by the subsequent decisions, this language has been the source of much discussion and frequent speculation.
See People v. Rincon-Pineda, 14 Cal.3d 864, 123 Cal. Rptr. 119, 538 P.2d 247 (1975), reported and annotated at 92 ALR3d 845, a case reviewing the background and origin of this instruction going back to Lord Hale and considering the manner which "Hale's musings were introduced somewhat obliquely into the law of California," and holding that the instruction has outworn its usefulness and is not to be given. Note: "Farewell to Lord Hale," 11 Tulsa Law Journal, 279, 281 (1975):
Contrasting the state of seventeenth century criminal procedure with modern due process the court in Rincon-Pineda demonstrated that Hale's caution was reasonable during his time. In the seventeenth century the accused was expected to address the jury without benefit of counsel. He was not presumed innocent, and to convict him it was not necessary to prove his guilt beyond a reasonable doubt. Furthermore, his rights to present witnesses in his defense and to compel their attendance at trial were barely nascent.
[5] Supra at note 4.
[6] 2 Bishop on Criminal Procedure § 968 (2d Ed. 1872):

It is seen, therefore, that, in point of law, the jury may convict on the testimony of the injured female, though it is wholly uncorroborated. And even for the offence of carnally abusing a female child below the age of ten years,  suppose she is only nine years old,  there may be a conviction when her testimony is wholly uncorroborated as to the principal fact, no medical evidence being introduced, and no examination of her person having been made at the time.
[7] 3 Greenleaf on Evidence § 212 (15th Ed. 1892):

It is to be remembered, as has been justly observed by Lord Hale, that it is an accusation easily made, hard to be proved, and still harder to be defended, by one ever so innocent. The party injured is legally competent as a witness; but her credibility must be left to the jury, upon the circumstances of the case which concur with her testimony:... .
[8] Williams v. Dickenson, 28 Fla. 90, 9 So. 847, 852 (1891):

The rule in such cases is thus correctly laid down in 2 Thompson on Trials, section 2420: "The judge must be careful not to trench upon the exclusive province of the jury in determining the credibility of particular witnesses, or the degree of credit to be given to particular elements of the evidence. He may instruct them as to the rule, but not as to the weight, of the evidence; that is to say, he should not instruct them as to the relative weight of the testimony, or the credibility of the witnesses. He should not undertake to control the freedom of their judgment in dealing with the probabilities of the testimony."
[9] Tibbs v. State, 337 So.2d 788, 790 (Fla. 1976) [date of crime: February 3, 1974]:

The law in Florida appears well established to the effect that no corroborative evidence is required in a rape case when the victim can testify directly to the crime and identify her assailant. Thomas v. State, 167 So.2d 309 (Fla. 1964)... . The limitation to its application, however, is "that where the sole witness is the prosecutrix, her testimony must be carefully scrutinized so as to avoid an unmerited conviction." Thomas, above, at 310.
Decision modified and disapproved, in part, in Tibbs v. State, 397 So.2d 1120, 1126 (Fla. 1981) [remanded for new trial]:
Tibbs' conviction rested primarily on the uncorroborated testimony of the rape victim, Cynthia Nadeau. Although this testimony alone was legally sufficient to support Tibbs' conviction under Florida law, Thomas v. State, 167 So.2d 309 (Fla. 1964), we reversed his conviction due to a number of "infirmities in the evidence establishing Tibbs as the perpetrator" of the crime. Among these infirmities were several aspects of Nadeau's testimony which cast serious doubt on her believability. In effect we reweighed the evidence supporting Tibbs' conviction and remanded for a new trial. Judged in light of today's decision, this action was clearly improper.
Thomas v. State, 167 So.2d 309, 310 (Fla. 1964) [conviction affirmed]:
The rule is that where the sole witness is the prosecutrix, her testimony must be carefully scrutinized so as to avoid an unmerited conviction. Johnson v. State, Fla.App. 1960, 118 So.2d 806. The testimony of the prosecutrix survives such scrutiny. It is reasonable, consistent with corroborating evidence on other points not necessary to be discussed, and is not in anywise contradictory.
Berezovsky v. State, 335 So.2d 592, 593 (Fla. 3d DCA 1976) [conviction affirmed]:
He first argues that the evidence was insufficient to establish the elements of force and lack of consent pursuant to § 794.01, Fla. Stat., F.S.A.
... .
... . [W]ith respect to the crucial elements of force and resistance we have only the prosecuting witnesses' testimony upon which a conviction may be sustained without independent corroborating evidence if such testimony is clear and convincing and not materially discredited or impeached. Furthermore, this testimony must be rigidly scrutinized to avoid an unmerited conviction for rape and the jury was so instructed. [citations omitted]
Not cited by defendant, but also containing the language in question is Coker v. State, 83 Fla. 672, 93 So. 176, 178 (1922):
Upon a prosecution for rape alleged to have been committed "forcibly and against the will of" the prosecuting witness, reasonable latitude should be allowed in adducing evidence to test the probative force of the testimony of the prosecutrix as to the nature and extent of the force used and as to whether consent was or was not ultimately yielded, since the accomplishment of the act by force, and against the will of the female are the essential elements in the crime, and where no other person was an immediate witness to the act, the testimony of the prosecutrix should be rigidly scrutinized to avoid an unmerited conviction for a capital offense.
[10] Section 794.01, Florida Statutes, (Rape and Forcible Carnal Knowledge) was repealed effective October 1, 1974, Laws of Florida 74-121.
[11] The Standard Jury Instruction on Rape (Section 794.01, Florida Statutes, now repealed) included the following:

If the testimony of the female is not supported by other evidence her testimony should be rigidly examined, especially as it related to the nature and extent of the force used and as it related to the question of whether or not consent was ever finally given... .
This instruction was omitted from Standard jury Instructions in Criminal Cases in 327 So.2d 6 (Fla. 1976), and is not in the present Standard Instructions.
Prior to 1983, Section 794.022, Florida Statutes, entitled "Rules of Evidence," provided as follows:
(1) The testimony of the victim need not be corroborated in prosecutions under s. 794.011 [sexual battery]; however, the court may instruct the jury with respect to the weight and quality of the evidence. [emphasis added]
The underscored language was omitted on amendment by Chapter 83-258, Laws of Florida (1983), effective June 24, 1983.
[12] Cf. Howell v. State, 136 So. 456 (Fla. 1931), set aside on other grounds, 102 Fla. 612, 139 So. 187 (1931), an incest case wherein the trial court refused the instruction, and, on appeal, the court, although ruling that the trial court could have so instructed the jury, held that failure to do so was not error, and the conviction was affirmed. This case is distinguished from Doyle v. State, supra, in 92 ALR3d 875 at note 22 based on victim's age and other factors.

In this regard, it should be noted that Lord Hale's cautionary concerns were directed toward rape charges made by "infants" (minors) and grew out of his own experience or knowledge of two cases in which prosecutrix was 14 years old. 1 Hale, Pleas of Crown at 633-634 (1847). See People v. Rincon-Pineda, 14 Cal.3d 864, 123 Cal. Rptr. 119, 538 P.2d 247 (1975).
[13] Chapter 76-237, Laws of Florida (1976), effective July 1, 1977, and not retroactive. Mangram v. State, 392 So.2d 596 (Fla. 1st DCA 1981).
[1] In fact, the deletion of the language formerly in Section 794.022(1), by Chapter 83-258, Section 1, Laws of Florida, which had permitted the trial judge to "instruct the jury with respect to the weight and quality of the evidence" in cases in which the testimony of a rape victim is uncorroborated, appears to have been an attempt to bar trial judges from so instructing  although the language presently in section 794.022(1) says nothing to that effect. The staff report of the Judiciary Committee, House of Representatives on HB 348, which led to the passage of Chapter 83-258, states as follows:

Section 794.022(1), F.S., provides that the testimony of the victim of a sexual battery need not be corroborated, but the court may instruct the jury with respect to the weight and quality of the evidence.
* * * * * *
In Tibbs v. State, 337 So.2d 788 (Fla. 1976) the Supreme Court, in examining s. 794.022(1) stated "if the testimony of the female is not supported by other evidence, her testimony should be rigidly examined, especially as it related to the nature and extent of the force used and as it related to the question of whether or not consent was finally ever given." However, it has also been held that it was not reversable [sic] error if specific instructions to the jury to rigidly scrutinize the victim's testimony are not given. Williamson v. State, 338 So.2d 873 (Fla. 3d D.C.A. 1976).
B. Probable Effect of Proposed Changes:
HB 348 would amend s. 794.022(1) to remove from the court the power to instruct the jury with respect to the weight and quality of the evidence offered by a victim of a sexual assault. This change would eliminate the possibility of reversal for failure by the court to instruct the jury in this regard.
[2] Although the legislature's right to regulate judicial procedure may not collide with the separation of powers doctrine, any such legislation would clearly intrude upon the powers conferred upon the supreme court to adopt rules of procedure for the courts by Article V, Section 2 of the Florida Constitution. See Markert v. Johnston, 367 So.2d 1003 (Fla. 1978).
[3] Although this statute would now appear to have been superseded by rule 3.390, which went into effect in 1973, In re Florida Rules of Criminal Procedure, 272 So.2d 65 (Fla. 1972), the statute has not as yet been repealed by the legislature.
[4] The concerns voiced by the federal judiciary were similarly echoed by two commentators who state, regarding Florida's en banc rule, that "en banc proceedings [should be limited] to those few cases that truly exhibit a basis for en banc jurisdiction, ...." Booth and Clarkson, The Florida En Banc Rule, 36 U.Fla.L.Rev. 71, 93 (1984).