494 So.2d 1139 (1986)
Paul Allen MARR, Petitioner,
v.
STATE of Florida, Respondent.
No. 67349.
Supreme Court of Florida.
September 25, 1986.
Silas R. Eubanks, T. Whitney Strickland, Jr., Tallahassee, for petitioner.
Jim Smith, Atty. Gen., Gregory G. Costas and Raymond L. Marky, Asst. Attys. Gen., Tallahassee, for respondent.
EHRLICH, Justice.
We have for our review Marr v. State, 470 So.2d 703 (Fla. 1st DCA 1985), wherein the district court certified a question of great public importance. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
The petitioner, Marr, was charged with and convicted of sexual battery by oral penetration, pursuant to section 794.011(3), Florida Statutes (1983). The only evidence produced by the state at trial was the testimony of the victim. At trial petitioner denied the sexual battery and attempted to show that the victim had fabricated the incident because of animosity between the victim's boyfriend, Young, and the petitioner. Petitioner proffered a line of questioning, outside the presence of the jury, relating *1140 to the sexual intimacy of the victim and Young. The trial judge ruled that these questions were barred by section 794.022(2),[1] and held that this section did not unconstitutionally deny petitioner his confrontation rights guaranteed by the sixth amendment to the United States Constitution. Petitioner requested the jury be given the following instruction: "In a case where no other person was an immediate witness to the alleged act, the testimony of the prosecutrix should be rigidly scrutinized." The trial court denied the request, giving instead standard instruction 2.04, Florida Standard Jury Instructions in Criminal Cases, 2 Ed.:
It is up to you to decide what evidence is reliable. You should use your common sense in deciding which is the best evidence, and which evidence should not be relied upon in considering your verdict. You may find some of the evidence not reliable, or less reliable than other evidence.
You should consider how the witnesses acted, as well as what they said. Some things you should consider are:
1. Did the witness seem to have an opportunity to see and know the things about which the witness testified?
2. Did the witness seem to have an accurate memory?
3. Was the witness honest and straightforward in answering the attorneys' questions?
4. Did the witness have some interest in how the case should be decided?
5. Does the witness' testimony agree with the other testimony and other evidence in the case?
You may rely upon your own conclusion about the witness. A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness.
On appeal a panel of the First District Court of Appeal affirmed the trial court's ruling on the constitutionality of section 794.022(2), but reversed the trial court's denial of the requested instruction. On rehearing en banc, pursuant to rule 9.331, Florida Rules of Appellate Procedure, a majority of the first district voted to vacate that portion of the panel decision holding that petitioner's requested instruction should have been given, and certified the following question:
In a trial on a charge of sexual battery, where the sole immediate witness to the alleged act is the prosecutrix, did the trial court err in refusing to give the following instruction requested by defendant: "In a case of this kind, where no other person was an immediate witness to the alleged act, the testimony of the prosecutrix should be rigidly scrutinized."?
470 So.2d at 712.
We answer the question in the negative and hold that the requested instruction should not be used in sexual battery cases.
The requested instruction is said to have had its historical genesis with Sir Matthew Hale (1609-1676), Lord Chief Justice of England under Charles II. In People v. Rincon-Pineda, 14 Cal.3d 864, 538 P.2d 247, 123 Cal. Rptr. 119 (1975), the Supreme Court of California reviewed the background and origin of this instruction, once considered mandatory in California prosecutions for illicit sexual conduct, and determined that the instruction no longer served any just purpose. One of the many reasons noted by the Court for the instruction's historical justification was that the nature of these sexual crimes "is so thoroughly *1141 repugnant to the average person that it can breed that righteous outrage which is the enemy of objective fact finding." 14 Cal.3d at 879, 538 P.2d at 257, 123 Cal. Rptr. at 129. Also, the "shocking nature of the act" might lead a victim to misidentify the alleged perpetrator. Id. Another reason given for this instruction's utility in Hale's day was that the crime of rape was a charge easily made yet difficult to defend against; therefore the instruction was perceived as protection from an unwarranted conviction. One commentator has summarized the California Supreme Court's analysis of this reason:
Contrasting the state of seventeenth century criminal procedure with modern due process the court in Rincon-Pineda demonstrated that Hale's caution was reasonable during his time. In the seventeenth century the accused was expected to address the jury without benefit of counsel. He was not presumed innocent, and to convict him it was not necessary to prove his guilt beyond a reasonable doubt. Furthermore, his rights to present witnesses in his defense and to compel their attendance at trial were barely nascent.
Note, People v. Rincon-Pineda: Rape Trials Depart the Seventeenth Century  Farewell to Lord Hale, 11 Tulsa Law Journal, 279, 281 (1975) (footnotes omitted).
The first reported Florida case discussing the requested instruction appears to be Doyle v. State, 39 Fla. 155, 22 So. 272 (1897). In Doyle, the defendant was convicted of rape and on appeal to this Court claimed that it was error for the trial court to have refused his request for a series of jury instructions essentially identical to the instruction at issue here. Holding that a judge should not instruct the jury on the weight to be given the evidence, we explicitly rejected the defendant's claim of error and held that the requested instructions were "matters of argument merely, and not principles of law," 39 Fla. at 160, 22 So. at 273, and further held:
If in any case it is proper for the court to instruct the jury that they should scrutinize the testimony of the prosecutrix with caution, no authority can be found to sustain the proposition that such testimony must, as a matter of law, be received with more than ordinary doubt and suspicion.
39 Fla. at 162, 22 So. at 274. The confusion over the use of the language at issue here surfaced subsequently, however, as some Florida appellate court opinions contain language similar to that of the requested instruction. See, e.g., Tibbs v. State, 337 So.2d 788 (Fla. 1976); Thomas v. State, 167 So.2d 309 (Fla. 1964); Berezovsky v. State, 335 So.2d 592 (Fla. 3d DCA 1976), aff'd in part, rev'd in part, 350 So.2d 80 (Fla. 1977). These cases have been discussed in some detail by the district court below, and no useful purpose would be served here by repeating that discussion. What is worthy of repetition is the district court's observation that none of the cited cases involved a jury instruction issue or held that the trial court's failure to give such an instruction was error. Further, as the district court found, the cases apparently dealt with the language of the requested instruction in the context of appellate review of the sufficiency of the evidence. 470 So.2d at 710-711.
It has been settled law in this state, at least since Doyle was decided, that no corroborative evidence is required in a rape case when the victim can testify to the crime and identify her assailant. See, e.g., Thomas v. State, 167 So.2d 309 (Fla. 1964). Under the old "rape" statute, section 794.01, Florida Statutes (repealed, effective Oct. 1, 1974, Laws of Florida 74-121), the Standard Jury Instruction on "rape" included the following:
If the testimony of the female is not supported by other evidence her testimony should be rigidly examined, especially as it related to the nature and extent of the force used and as it related to the question of whether or not consent was ever finally given.
This instruction was omitted from the Standard Jury Instructions promulgated by this Court at 327 So.2d 6 (Fla. 1976) and is not included in the present instructions. Also, *1142 section 90.106 of the Florida Evidence Code, adopted by this Court, 372 So.2d 1369; 376 So.2d 1161 (Fla. 1979), codified the common law prohibition against judicial comments to the jury on the weight to be given evidence or the credibility of a witness. See e.g., Williams v. Dickenson, 28 Fla. 90, 9 So. 847 (1891), rev'd on other grounds, Abraham v. Baldwin, 52 Fla. 151, 42 So. 591 (1906).
During oral argument before this Court, counsel for the state urged us to "bury Lord Hale once and for all." We oblige. We hold that a jury instruction such as the one requested here, which singles out the testimony of a sexual battery victim as somehow deserving more rigid scrutiny by a jury than other witnesses' or victims' testimony, should no longer play a role in Florida jurisprudence. The full panoply of due process rights exists to protect each criminal defendant from an unwarranted conviction. Appellate courts, as always, are available to ensure that a conviction of any crime is supported by sufficient evidence. But we can discern no unique reason why those accused of sexual battery should occupy a status different from those accused of any other crime where the ultimate factual issue at trial pivots on the word of the victim against the word of the accused.[2]
The standard instruction given by the trial court in this case was adequate, giving guidance to the jury without impermissibly commenting on the weight to be given the evidence or the credibility of any witness. Counsel for both the state and the defense in their opening statements and closing arguments made it explicitly clear to the jury that this case turned totally on whether the jury believed the victim's testimony. In essence, both parties asked the jury to "rigidly scrutinize" the testimony of the prosecutrix. This is a proper argument from counsel; it would not be proper had the same statements come from the bench clothed as principles of law.
Petitioner's defense at trial was that the alleged sexual battery was fabricated by the victim solely because of personal animosity between the victim's boyfriend, Young, and the petitioner. In order to show the bias of the victim to falsely testify, petitioner proffered a line of questioning, outside the presence of the jury, relating to sexual intimacy between the victim and Young. The trial court held this line of questioning was barred by section 794.022(2). Petitioner claims that this was an unconstitutional abridgment of his right to full and fair cross-examination guaranteed by the sixth amendment to the United States Constitution. We disagree.
Under section 794.022(2), a victim's prior sexual activity with anyone other than the accused is generally not admissible evidence. Such evidence may be admissible only if, in an en camera proceeding, the evidence tends to show that it was not the accused who committed the act or if it goes to the issue of the victim's consent. We view this section as essentially an explicit statement of the rule of relevancy: A victim's prior sexual activity with one other than the accused is simply irrelevant for determining the guilt of the accused. The only time the victim's prior sexual activity with a third person is relevant is when such evidence may show the accused was not the perpetrator of the crime or if the defense is consent by the victim. This view is buttressed by subsection (3), which provides that the victim's reputation for prior sexual conduct is irrelevant and hence inadmissible. It appears that these sections' underpinnings are based on the idea that a sexual battery victim should be able to come forward and testify against the alleged perpetrator without having the victim's prior *1143 sexual activities become the focal point of the trial, rather than the guilt or innocence of the accused.
Petitioner's claim here is that the proffered questions were solely to show the depth of the relationship between the victim and her boyfriend in order to show the witness's bias. Petitioner correctly asserts that the right to show a witness's bias is constitutionally mandated, and directs our attention to Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Davis, however, is clearly distinguishable. In that case, the crucial prosecution witness, Green, was on probation by an order of a juvenile court after having been adjudicated a delinquent for burglary. Pursuant to an Alaska statute which prevented juvenile records from being admissible evidence in non-juvenile cases, the prosecution successfully moved for a protective order to prevent the defense from revealing Green's juvenile probationary status. The defense argued against the motion, claiming that Green's probationary status was relevant to show Green's bias and prejudice, i.e., Green may have identified the defendant in order to shift suspicion away from himself or under fear that his probationary status may be jeopardized. The protective order was granted and the Alaska Supreme Court affirmed the defendant's conviction, finding that the defense's cross-examination of Green's possible bias or motive to testify, was "adequate." Id. at 315, 94 S.Ct. at 1109-10. The United States Supreme Court reversed, holding that exposure of a witness's motivation to testify is of constitutional dimension and found that the use of the protected juvenile records was the only way the defense could show why Green may not be a credible witness. Id. at 317-18, 94 S.Ct. at 1111.
Sub judice, petitioner was able to show the depth of the relationship between the victim and Young, informing the jury during his opening statement that the two "were lovers," and eliciting testimony from both parties that they had an intimate relationship and were in love. Petitioner's questioning of Young fully explored the details of the incidents leading to the animosity between Young and the petitioner. In short, petitioner was afforded an adequate and fair opportunity to show the bias and motive of the victim and Young without delving into the sexual nature of their relationship. See Commonwealth v. Elder, 389 Mass. 743, 452 N.E.2d 1104 (1983). Whatever marginal utility or attenuated relevance the proffered questions may have had is clearly overshadowed in this case by the policy enunciated in section 794.022. We understand the concern expressed by the panel decision below, 470 So.2d at 706, n. 3, and by the Fourth District in Kaplan v. State, 451 So.2d 1386, 1387 (Fla. 4th DCA 1984), that if in a particular case there is a complete foreclosure of cross-examination seeking to disclose the bias of a key witness serious constitutional problems may be presented. We find no such problem in the case before us. The trial court below carefully protected petitioner's rights while at the same time furthered the policy manifested in section 794.022.
Accordingly, we answer the certified question in the negative and approve the decision of the district court below.
It is so ordered.
McDONALD, C.J., and ADKINS, BOYD, OVERTON, SHAW and BARKETT, JJ., concur.
NOTES
[1] § 794.022(2), Fla.Stat (1983), provides:

Specific instances of prior consensual sexual activity between the victim and any person other than the offender shall not be admitted into evidence in a prosecution under s. 794.011. However, such evidence may be admitted if it is first established to the court in a proceeding in camera that such evidence may prove that the defendant was not the source of the semen, pregnancy, injury, or disease; or, when consent by the victim is at issue, such evidence may be admitted if it is first established to the court in a proceeding in camera that such evidence tends to establish a pattern of conduct or behavior on the part of the victim which is so similar to the conduct or behavior in the case that it is relevant to the issue of consent.
[2] Our historical experience belies the contention that rape is a charge easily made yet difficult to defend against, as at trial victims of a sexual battery often find themselves feeling more like the accused rather than the victim. The empirical data compiled by the Federal Bureau of Investigation and cited by the California Supreme Court in Rincon-Pineda indicates that of the FBI's four "violent crime" offenses (murder, forceable rape, robbery and aggravated assault) rape has the highest rate of acquittal or dismissal. 14 Cal.3d at 879, 538 P.2d at 257, 123 Cal. Rptr. at 129.