967 So.2d 1095 (2007)
Saturnino ESTEBAN, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-2749.
District Court of Appeal of Florida, Fourth District.
November 14, 2007.
*1096 Carey Haughwout, Public Defender, and Marcy K. Allen, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
Appellant challenges his conviction for sexual battery and false imprisonment contending that the trial court erred in granting the state's motion in limine, preventing him from producing evidence that the victim was a prostitute. He claimed this fact was necessary to support his defense that someone else attacked the victim. He also challenges the admission of hearsay statements by the victim to an examining physician that she knew her attacker. We hold that the court properly granted the motion in limine and that the admission of hearsay was harmless error.
Appellant Saturnino Esteban lived with the victim's sister in Broward County. The victim lived in Atlanta but often visited. She and Esteban had a casual sexual relationship during these visits. Although the victim had a boyfriend in Atlanta and Esteban dated other women, Esteban wanted their relationship to become something more serious. According to the victim, her refusal to become Esteban's girlfriend triggered the attack.
The victim came to visit in May 2005 but refused to stay in Esteban's room. On the day of the incident, the victim went to the beach with friends. When she returned, Esteban thanked her for cooking dinner and kissed her. He then went to buy beer.
Later on in the evening, after the victim's friends left, she remained on the patio of the home, talking on her cell phone. Around 12:30 a.m., Esteban grabbed her from behind, called her names, and told her he was going to make her pay for all the times she ignored him. He pushed her to the side of the house, struck her, bit her, and sexually assaulted her. He sexually assaulted her twice more on cushions by the side of the house. He did not use a condom.
Holding her by the throat, Esteban then forced the victim back into the house and to his room where he sexually assaulted her again. She attempted to escape by telling him she had to go to the bathroom; however, Esteban refused to allow her to leave. She urinated on the bed.
When morning came, Esteban begged the victim not to tell anyone what had happened. He offered her money and to get her medication for her injuries. He also concocted a story to tell the others that he and the victim had gone to a bar, and she had been assaulted on the way home.
After Esteban left for work in the morning, the victim immediately awoke her sister and told her what happened. The police were called to the house. Once there, they conducted an investigation, taking the victim's statement and photographing her injuries. Her throat was swollen, and she had difficulty speaking. She was taken to the hospital for a sexual assault examination. The examining physician explained the results of his examination and his observations of the victim's injury. Over a hearsay objection, the doctor was permitted to testify that the victim told him that she knew her attacker. The doctor did not testify as to the attacker's identity or his relationship to the victim. A rape kit was prepared, and tests proved *1097 that DNA of Esteban was found on a vaginal swab from the victim.
A detective also gathered up physical evidence at the house, including the cushions outside the house. Although the victim testified that Esteban did not use a condom when he raped her on the cushions, a condom was recovered near the cushions. However, none of these items were tested for DNA evidence.
Upon returning from work, Esteban was surprised to find the detective at the residence. The detective arrested Esteban, who waived his Miranda rights and told the detective his version of events, to which Esteban also testified at trial with some variation. He testified that he had been drinking the entire day when the victim was at the beach, and he continued to drink that evening until he passed out. The next thing he remembers was waking up in his bed next to the victim. He was surprised by the injuries he saw on her. However, despite these injuries, she told him that she wanted to have sex with him but she did not want him to use a condom. He complied. Afterwards, he told the victim that he would stop by the drugstore to obtain medications for her injuries. He then left for work.
The detective's testimony differed somewhat from Esteban's testimony regarding what Esteban told him at the time of his arrest. Esteban did not remember what happened because he had been drinking. However, Esteban told the detective that when he woke up and looked at the victim's injuries, the victim said to him, "Don't you remember what you did?" The detective also never mentioned that Esteban had told him that the victim had wanted sex in the morning.
Esteban's theory of defense at trial was that someone else had sexually assaulted the victim and physically battered her on the cushions outside the house. To support his defense he sought to offer evidence that the victim was a prostitute. The state moved in limine to prevent Esteban from making a reference that the victim was a prostitute. The defense proffered comments made by the detective in Esteban's taped statement that the detective knew the victim was a prostitute. However, the detective testified during the proffer and admitted that he had no factual evidence that the victim was a prostitute. He had merely made some assumptions. Esteban also proffered his own testimony regarding her prostitution activities. After having heard the proffer of evidence, the trial court granted the motion in limine and refused admission of the evidence.
The jury found Esteban guilty as charged. The court entered a conviction and sentenced him to fifteen years in prison for the sexual assault and five years for the false imprisonment, each to run concurrently. From this conviction, Esteban appeals, raising the refusal to admit evidence that the victim was a prostitute and the doctor's hearsay testimony that the victim admitted that she knew her attacker as requiring reversal of his conviction.
The standard of review with respect to the lower court's ruling on the admissibility of evidence is abuse of discretion. Ray v. State, 755 So.2d 604, 610 (Fla.2000). However, in Minus v. State, 901 So.2d 344, 348 (Fla. 4th DCA 2005), this court explained that "[t]he standard for the admission of evidence that a criminal defendant seeks to admit . . . is broader than that of a civil defendant because of the defendant's Sixth Amendment rights." Nevertheless, the evidence must be relevant.
Florida's rape shield law limits evidence of a sexual battery victim's other sexual activity and reputation evidence of prior sexual conduct. That statute provides in pertinent part:
(2) Specific instances of prior consensual sexual activity between the victim and *1098 any person other than the offender shall not be admitted into evidence in a prosecution under s. 794.011. However, such evidence may be admitted if it is first established to the court in a proceeding in camera that such evidence may prove that the defendant was not the source of the semen, pregnancy, injury, or disease. . . .
(3) Notwithstanding any other provision of law, reputation evidence relating to a victim's prior sexual conduct . . . shall not be admitted into evidence in a prosecution under s. 794.011.
§ 794.022, Fla. Stat. (2005).
In Marr v. State, 494 So.2d 1139 (Fla. 1986), the supreme court held that the statute did not violate a defendant's Sixth Amendment rights, because it constituted a rule of relevance:
We view this section as essentially an explicit statement of the rule of relevancy: A victim's prior sexual activity with one other than the accused is simply irrelevant for determining the guilt of the accused. The only time the victim's prior sexual activity with a third person is relevant is when such evidence may show the accused was not the perpetrator of the crime or if the defense is consent by the victim. This view is buttressed by subsection (3), which provides that the victim's reputation for prior sexual conduct is irrelevant and hence inadmissible. It appears that these sections' underpinnings are based on the idea that a sexual battery victim should be able to come forward and testify against the alleged perpetrator without having the victim's prior sexual activities become the focal point of the trial, rather than the guilt or innocence of the accused.
Id. at 1142-43 (emphasis added). See also Commerford v. State, 728 So.2d 796 (Fla. 4th DCA 1999). Consistent with this view, in Roberts v. State, 510 So.2d 885, 892 (Fla.1987), the supreme court held that evidence that the victim was a prostitute was inadmissible where it was not offered to show that the victim consented to sex with the defendant, because consent was not an issue in that case as the defendant claimed not to have had sex at all with the victim.
Robinson v. State, 575 So.2d 699 (Fla. 1st DCA 1991), provides a useful analysis for the trial court to determine when to admit evidence that the victim of sexual battery was a prostitute. First, the defendant must "make a sufficient showing through an offer of proof on the record or by other appropriate means, that the evidence of prostitution bears materially" on the issues and that without this evidence, "the defendant's ability to present a defense will be critically hampered. . . ." Id. at 703. If the defendant makes a sufficient showing, "then the trial court should engage in a balancing test to weigh the probative value of the evidence against the unfair prejudice to the victim and the state's case to determine if it should be admitted." Id.
Here, Esteban sought to introduce the victim's reputation as a prostitute to suggest that someone else may have perpetrated this crime. As Marr noted, a victim's prior sexual activity with a third person is relevant when it may show that someone else committed the crime. But Esteban did not attempt to show specific acts of sexual activity with a third person on the evening of the attack, which is what we believe the supreme court meant in Marr. Evidence that the victim was a prostitute is reputation evidence, which under section 794.022(3) is inadmissible. It is not relevant in this case, because it does not tend to prove a material fact in the case. The victim's reputation does not tend to prove that the victim was acting as a prostitute and was attacked by one of her customers. To make such connection under *1099 the facts of this case would amount to sheer speculation. We agree with the trial court that such evidence was not relevant.
On appeal, Esteban also argues that evidence of the victim being a prostitute went to her credibility and motive to lie about an attack by Esteban. He claims she wanted to cover up her life as a prostitute, because she did not want to explain that she was beaten up by one of her clients. He did not support his theory by any proffer of evidence.
Where the defense claims that the victim has fabricated her testimony in order to preserve the victim's sexual relationship with a third person, courts have permitted admission of such evidence. See Lewis v. State, 591 So.2d 922 (Fla.1991). We have permitted a defendant to examine a victim about her sexual history where her parents disapproved of her non-marital sexual relationship which could constitute a motive to lie about consensual sex with the defendant. See Jones v. State, 577 So.2d 606 (Fla. 4th DCA 1991). Similarly, in Dixon v. State, 605 So.2d 960, 961 (Fla. 2d DCA 1992), in a trial for sexual battery of a child, the court permitted evidence that the child had engaged in sexual play with her younger brother some weeks before the alleged assault to support the defendant's claim that the child victim's detailed testimony about sex with the defendant was false. His defense was that the child victim had fabricated the story at the instigation of the mother and her boyfriend to send the defendant to jail, because he had made a pass at the mother. That the child may have engaged in sexual activity with her little brother would prove her knowledge of sexual matters such that the defendant's claim of fabrication would seem more plausible.
All of these cases involve a specific incident or relationship which the victim may be seeking to hide or preserve which may give rise to a claim of a motive to fabricate to protect that relationship. There was no similar type of evidence in this case. In fact, Esteban really does not explain why his evidence that the victim worked as a prostitute provided a motive to accuse him of sexual battery. Esteban offered no evidence that the victim's family would have disowned her had they discovered her (alleged) work as a prostitute or that she was plotting against Esteban, or any specific motive to lie. Were we to accept Esteban's argument on this point, then the rape shield law would have little effect, because a defendant could always argue that prior sexual conduct or reputation was a reason to lie about subsequent sexual activity.
As a second issue on appeal, Esteban claims that the court erred in allowing the examining physician to testify that the victim stated to him that she knew her attacker, although he did not testify that she identified Esteban. He noted that he does not usually ask such information. This evidence constituted hearsay and was not for the purpose of medical diagnosis. § 90.803(4), Fla. Stat. (2005). See Conley v. State, 620 So.2d 180 (Fla.1993). Nevertheless, we conclude that it was harmless beyond a reasonable doubt. The physician did not testify that the victim identified Esteban as her attacker. Moreover, the detective testified that the victim identified Esteban as her attacker. Thus, at best the physician's statement was merely cumulative to the far more extensive testimony of the detective and the victim herself.
Having concluded that the trial court correctly ruled on these evidentiary objections, we affirm the conviction and sentence.
GUNTHER and GROSS, JJ., concur.