# Third District Court of Appeal

## State of Florida

Opinion filed August 01, 2018.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D16-2775
Lower Tribunal No. 10-27158B

————————————

**Ruben Arroyo,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Dava J. Tunis, Judge.

Carlos J. Martinez, Public Defender, and Robert Kalter, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Eric J. Eves, Assistant Attorney General, for appellee.

Before ROTHENBERG, C.J., and SUAREZ and LINDSEY, JJ.

ROTHENBERG, C.J.

Ruben Arroyo ("the defendant") appeals from his conviction and sentencing for sexual battery with specified circumstances by multiple perpetrators. He contends on appeal that the trial court erred by precluding him from inquiring into the victim's prior sexual history with her ex-boyfriend and by prohibiting defense counsel from introducing certain text messages exchanged between one of his co-defendants and the victim. The defendant also contends that the trial court erred by denying his motion for judgment of acquittal because there was insufficient evidence to prove that there were specified circumstances, namely, that the victim was either physically helpless to resist or was physically incapacitated. We find no error below, and therefore, we affirm.

## BACKGROUND

The defendant was charged by information with the sexual battery with specified circumstances by multiple perpetrators for his part in the sexual battery of K.P.M. ("the victim"), which occurred on the night of September 11, 2010. The other alleged perpetrators, Dante Lee Pigatt ("Pigatt") and Gerson Juarez ("Juarez"), were also charged with sexually assaulting the victim.

Before trial, the State filed a motion in limine pursuant to the Rape Shield Statute, section 794.022, Florida Statutes (2010), to exclude any reference to the alleged fact that the victim had sex with her ex-boyfriend, Brandon Tyler ("Tyler"), prior to arriving at a party at Juarez's home, where the sexual battery

2

occurred. The trial court granted this motion. Additionally, during the same pretrial hearing and again when the defense was cross-examining the victim at trial, the trial court ruled that the defense could not inquire about text messages exchanged between the victim and Juarez, including some sent by Juarez that were sexually explicit, because they were hearsay and because they were more prejudicial than probative.

At trial, the victim testified as follows. On the night of September 11, 2010, she and Tyler drove to a party at Juarez's home. The victim had not met Juarez before that night. The victim, who was inexperienced with alcohol, quickly drank approximately twelve shots of vodka, became heavily intoxicated, fell down, and hit her head. Tyler helped her to the bedroom, where she vomited, but he then left the party to obtain more alcohol. The defendant, Pigatt, and Juarez were in the bedroom as well. While Tyler was away, the defendant, along with the two other perpetrators, sexually battered the victim.

The victim testified that she mumbled "no" while Juarez sexually assaulted her, but that she "felt heavy," like a "ragdoll," and she could not move her arms or legs or fight back. After Juarez's initial sexual assault upon the victim, he and the defendant took turns having intercourse with her, while Pigatt attempted to put his penis in her mouth. When Tyler returned, he found the victim in the bedroom and very inebriated. Tyler carried the victim to his car, where she vomited a second

3

time, drove her home, and with the help of the victim's mother, they were able to get her to bed. The next morning, the victim told Tyler that she had been raped at the party, and she reported the sexual assault to the police.

The defense's theory of the case was that the victim had consensual sex with the defendant at Juarez's party. Defense counsel argued that the victim had lied about the sexual battery because she wanted to conceal from her ex-boyfriend, Tyler, for whom she still had romantic feelings, that she had consensual intercourse with the defendant. After the trial, the jury returned a guilty verdict and the trial court sentenced the defendant to twenty-five years in prison, to be followed by ten years of probation. Thereafter, the defendant filed the instant appeal.

## ANALYSIS

The defendant contends on appeal that the trial court erred by: (1) precluding his attorney from cross-examining the victim about her alleged sexual intercourse with Tyler prior to arriving at Juarez's party; (2) limiting his ability to cross-examine the victim about the text messages she exchanged with Juarez some time prior to September 11, 2010; and (3) denying his motion for judgment of acquittal on the ground that there was insufficient evidence to support a finding that the sexual battery was committed while the victim was physically incapacitated or physically helpless to resist.

**1. Exclusion of evidence of the victim's prior consensual sexual activity**

First, we find no abuse of discretion in the trial court's proper limitation of defense counsel's cross-examination of the victim regarding whether she had sex with Tyler prior to arriving at Juarez's party on the authority of the Rape Shield Statute, section 794.022(2). See Lot v. State, 13 So. 3d 1121, 1123 (Fla. 3d DCA 2009) ("On appeal, we review the trial court's limitation of defense counsel's cross-examination for an abuse of discretion."). The Rape Shield Statute provides that "[s]pecific instances of prior consensual sexual activity between the victim and any person other than the offender shall not be admitted into evidence" in a prosecution for sexual battery. § 794.022(2). This language clearly applies to the victim's consensual sexual activity with Tyler prior to arriving at Juarez's party.

The Rape Shield Statute includes several statutory exceptions, none of which are asserted here. However, a defendant's Sixth Amendment right to confront his accuser may be implicated if **unreasonable** limits are placed on his right to cross-examine. See Lewis v. State, 591 So. 2d 922, 925 (Fla. 1991) (citing Olden v. Kentucky, 488 U.S. 227, 232 (1988) (recognizing that a trial court may impose reasonable limits on defense counsel's inquiry into the potential bias of a prosecution witness)). Thus, a trial court must weigh and balance the protection of the Rape Shield Statute with the defendant's constitutional right to be afforded with an "adequate and fair opportunity to show bias and motive of the victim"

without delving into the sexual nature of her relationship with another. <u>Marr v. State</u>, 494 So. 2d 1139, 1143 (Fla. 1986).

Marr was charged with and convicted of committing a sexual battery upon the victim. Marr's defense at trial was that the victim had fabricated the sexual assault based on animosity between Marr and the victim's boyfriend. The only evidence introduced by the State was the victim's testimony. Marr's counsel requested to question the victim about her sexual intimacy with her boyfriend. In his proffer, defense counsel explained that the questions he sought to ask were going to show the depth of the relationship between the victim and her boyfriend in order to demonstrate the victim's bias and motive to lie. <u>Id.</u> at 1143. The trial court denied the request based on the Rape Shield Statute.

Upon review by the Florida Supreme Court, the Court noted that "[u]nder section 794.022(2), a victim's prior sexual activity with anyone other than the accused is generally not admissible evidence," <u>Marr</u>, 494 So. 2d at 1142, and that the underpinnings of the statute "are based on the idea that a sexual battery victim should be able to come forward and testify against the alleged perpetrator without having the victim's prior sexual activities become the focal point of the trial, rather than the guilt or innocence of the accused." <u>Id.</u> at 1142-43. Although the Court recognized Marr's right to show bias was constitutionally mandated, it held that because Marr was able to show the depth of the relationship between the victim

6

and her boyfriend and explore the animosity between Marr and the victim's boyfriend, Marr had been afforded an adequate and fair opportunity to show bias and motive without delving into the sexual nature of the victim and her boyfriend's relationship. Id. at 1143.

The defendant contends that his Sixth Amendment confrontation rights were violated because he could not put on a meaningful defense without cross-examining the victim about her prior sexual activity. Specifically, the defendant contends that he had the right to cross examine the victim about her prior consensual sexual activity with Tyler because such activity demonstrated that she wanted to resume her prior girlfriend/boyfriend relationship with Tyler, and therefore she had a motive to lie about having consensual sex with the defendant later that evening. The defendant contends that the trial court's limitation of cross-examination on this issue precluded his ability to meaningfully present his defense. We disagree.

As in Marr, the defense was able to develop the following facts: the victim and Tyler dated for several years; Tyler was her first boyfriend, and he was "a pretty jealous guy"; even after they broke up, approximately two months before the sexual battery, they remained friends; Tyler still had feelings for the victim and wanted to rekindle the relationship; and although the victim testified that she did not still have feelings for Tyler, Tyler testified that on the night of the sexual

battery, the victim was "signaling" to him that she wanted to get back together with him. Thus, the defendant was able to adequately develop his theory of defense without introducing evidence of the prior consensual intercourse between the victim and Tyler, and the defendant's Sixth Amendment rights were not violated. See Floyd v. State, 503 So. 2d 956, 957 (Fla. 1st DCA 1987) (concluding that exclusion of evidence concerning a specific instance of consensual sexual activity between the victim and her boyfriend did not deny Floyd his constitutional right to present a defense).

**2. Exclusion of the text messages between the victim and Juarez**

The defendant also claims that the trial court abused its discretion by precluding him from introducing text messages sent by Juarez to the victim. We find no abuse of discretion because these text messages were marginally relevant, given that: (1) **they were not between the victim and the defendant**; (2) there was no time frame contextualizing when these texts messages were sent; (3) there was no indication that the victim reciprocated or was interested in Juarez when he sent sexually graphic text messages to her; and (4) the defendant testified that he was alone with the victim when he had consensual intercourse with the victim, and thus, the messages between Juarez and the victim were not relevant to the defendant's theory of the case. See Moore v. State, 701 So. 2d 545, 549 (Fla. 1997); Ruddock v. State, 763 So. 2d 1103, 1106 (Fla. 4th DCA 1999) (stating that

8

"the trial court has wide discretion to impose reasonable limits on cross-examination of matters which are only marginally relevant").

Additionally, the trial court's ruling prevented the risk of cross-examination turning into an improper attack on the victim's character as the kind of person who engages in this type of explicit text messaging. § 794.022(3), Fla. Stat. (2010) (stating that "reputation evidence relating to a victim's prior sexual conduct . . . shall not be admitted into evidence"); § 90.403, Fla. Stat. (2010) ("Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.").

**3. The denial of the defendant's motion for judgment of acquittal**

Lastly, the defendant contends that there was insufficient evidence to prove that the victim was **either** physically helpless under section 794.011(1)(e), Florida Statutes (2010), **or** physically incapacitated under section 794.011(1)(j), Florida Statutes (2010). For the reasons that follow, we find that there was competent substantial evidence to support a finding that the victim was both physically helpless under subsection 794.011(1)(e) and physically incapacitated under subsection 794.011(1)(j).

Whether the State adduced sufficient evidence to support a conviction with an enhancement for physical helplessness or physical incapacitation is generally a

jury question. See State v. Sedia, 614 So. 2d 533, 535 (Fla. 4th DCA 1993). As such, we will not reverse if there is competent substantial evidence supporting the jury's finding. Perez v. State, 479 So. 2d 266, 267 (Fla. 5th DCA 1985) ("The jury found beyond a reasonable doubt that, at the time of her sexual battery, the victim was physically helpless to resist. There was substantial competent evidence to support that conclusion. We do not have the authority to re-weigh or re-evaluate the evidence.") (internal quotation omitted).

A. **Section 794.011(1)(e), Physically Helpless**

In order to show that the victim was physically helpless, there must be evidence that the victim was "unconscious, asleep, or for any other reason physically unable to communicate unwillingness to an act" at all relevant times. § 794.011(1)(e); Sedia, 614 So. 2d at 534-35 (stating that "even though the [victim] was not unconscious or asleep, it is reasonable to conclude that she was otherwise physically unable to communicate an unwillingness to act prior to penetration") (internal quotation omitted); Perez, 479 So. 2d at 267.

When considered in the light most favorable to the State, there is competent substantial evidence to support the jury's finding that the victim was physically unable to communicate her unwillingness to the sex acts performed on her. After the victim arrived at Juarez's party, she quickly drank approximately twelve shots of vodka. She became heavily intoxicated, fell down, and hit her head on the hard

10

wooden backboard of a couch. Tyler carried her to the bedroom, where she vomited, and he then left the party in order to get more alcohol. Although the victim initially mumbled "no" at some point during the initial assault by Juarez, the evidence reflected that the victim was extremely intoxicated and felt helpless, like a "ragdoll." The victim additionally testified that she could not move her arms, felt "heavy," and she could not kick or fight. The jury could infer from this evidence that the victim was unable to convey her unwillingness to participate in the acts performed upon her at all relevant times.

B. **Section 794.011(1)(j), Physically Incapacitated**

In order to show that the victim was physically incapacitated, there must be evidence that the victim was "bodily impaired **or** handicapped and substantially limited in ability to resist or flee." § 794.011(1)(j) (emphasis added). The evidence presented at trial supports a jury finding that the victim was bodily impaired and substantially limited in her ability to resist or flee. Again, the victim was severely intoxicated, fell down, hit her head, was unable walk by herself, and vomited in the bedroom. Based on these facts and the victim's testimony that she felt like a "ragdoll" and could not move her arms or fight back, the jury could have found that the victim was unable to "resist or flee," during the sexual assault.

On appeal, the defendant relies heavily on Soukup v. State, 760 So. 2d 1072, 1074 (Fla. 5th DCA 2000), which he claims stands for the proposition that

11

voluntary intoxication cannot rise to the level of physical incapacitation contemplated by section 794.011(1)(j). However, the Soukup court made no such finding, and Soukup involved facts significantly different from the facts in this case. Id. at 1073. In Soukup, the alleged victim and some of her friends hired a stripper who engaged in lewd conduct with the alleged victim, who was intoxicated at the time. Id. The witnesses to this conduct did not describe it as anything other than consensual, and the case was decided on the grounds that the evidence demonstrated that the victim was a "willing participant" in the alleged criminal conduct. Id. at 1074. Indeed, a careful review of the relevant dictum in Soukup, on which the defendant relies, reflects that the Fifth District Court of Appeal was referring to the alleged victim's degree of intoxication when it said that "[t]he young woman's drunken state does not rise to the level of incapacitation contemplated" by the statute, and our sister court did not express in its opinion any per se rule that intoxication can never lead to a finding of physical incapacitation. We, therefore, reject the defendant's interpretation of Soukup.

## CONCLUSION

In summary, because the defendant was adequately and fairly able to develop his defense and cross-examine the victim without referring to the victim's prior consensual sexual conduct, we find that the trial court did not abuse its discretion by limiting the defense's cross-examination of the victim regarding her

12

sexual activity with Tyler prior to their arrival at Juarez's party. Additionally, the trial court did not abuse its discretion by limiting the marginally relevant text messages exchanged between the victim and Juarez. Finally, because there was competent substantial evidence to support a jury finding that either the victim was physically incapacitated or physically helpless, the trial court did not err by denying the defendant's motion for judgment of acquittal. Because the remainder of the defendant's arguments are without merit, we decline to specifically address them here.

Affirmed.